## AKRIDGE *v.* NOBLE.

1. In the trial of an action brought against a surgeon for malpractice, in which it was claimed that a sponge or pad which had been placed in the body of the plaintiff for the purpose of absorbing blood and pus while an operation was being performed had been carelessly left in the body after the wound had been closed, from which injury resulted, it was not error for the court to charge the jury that if they believed the pad or sponge had been in fact left in the body, they should then determine whether it was so left by reason of the failure of the defendant to exercise due care and skill, and that he owed the plaintiff a duty to exercise reasonable care and skill in performing the operation, including in that expression, not only the opening of the body and the removal of the affected parts, but also the use and handling of the sponges or pads.

2. It is not erroneous for the judge in the trial of a civil case to call the attention of the jury to the fact that they have taken an oath to try the case according to the evidence and the law as given them in charge by the court, and that they can not set up any ideas of their own in reference to the law of the case in opposition to what is contained in the charge of the court. There is noth-

ing in such a charge calculated to embarrass a conscientious juror in the discharge of his duty.

3. The evidence authorized the verdict. The charges complained of were not erroneous. The requests to charge, so far as legal and pertinent, were covered by the general charge, which fully and fairly submitted all of the issues to the jury; and the court did not err in refusing to grant a new trial.

Argued February 17, — Decided March 12, 1902.

Action for damages.  Before Judge Lumpkin.  Fulton superior court.  July 5, 1901.

The nature of the case is stated in the opinion of the court. The motion for a new trial contained the following, beside the general grounds:

The court erred in the following charge to the jury: "When you were empaneled you took an oath to well and truly try each cause submitted to you during the present service, and a true verdict to make according to the law as given you in charge and the opinion you entertain of the evidence produced to you, to the best of your skill and knowledge, without favor or affection to either party. You are here to try this case under the law and the evidence produced before you. You should look at the evidence, and, applying the law to it, seek to reach a verdict which shall speak the truth of the case, and shall be in accordance with the law and evidence, influenced by no favor or affection for either party. . . The law as given you in charge from the bench by the court you are bound to receive as being a correct exposition of the law. The jury are not the judges of the law in a civil case in any such sense as to authorize them to set up any opinion on their part as to what the law is, in conflict with or as overriding the law as given them from the bench. You receive the law as charged you from the bench as being correct law.  The facts on any contested issues of fact you determine from the evidence.  The court charges you the law which he deems apposite and appropriate to give you in charge; but he does not express or intimate to you, and does not intend throughout this charge to express or intimate to you, any opinion as to what are the facts on any question of contested facts or on any issue of fact.  The facts you must determine from the evidence; the law you will receive from the court." The movant contends that this part of the charge was calculated to intimidate and embarrass the jury, and not to leave them free to consider the case in the light of the evidence and law.

The court erred in the following charge: "If you believe from the evidence that the pad was in fact so left in her body, then you would determine whether or not it was so left by reason of the want of due care and skill — of the exercise of due care and skill on the part of the defendant. What duty as to diligence rests upon the surgeon, in connection with cases under his charge? The answer is this : A person professing to practice surgery must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from the want of such care and skill will be a tort for which a recovery may be had." Under this charge the jury was compelled to find for the defendant unless they found under the evidence that the defendant was lacking in both care and skill. Plaintiff's counsel did say in argument that he did not attack the general professional skill of the defendant, or his diagnosis of the case, but contended that defendant was liable on account of his failure to perform his duty as a surgeon on this occasion. The charge was inapplicable to the issue on trial.

The court charged: "The defendant as a surgeon owed the plaintiff the duty of exercising reasonable care and skill in performing the operation described in the testimony, including all parts of the operation which he was performing, and which fell within its performance. The measure of skill and care which the law required him to have and use was that possessed and used by average surgeons in the general neighborhood in performing similar operations. The jury would not be authorized to substitute for this measure any arbitrary standard of skill or care. Look at the evidence, giving due consideration to all the facts and circumstances disclosed by it, and determine from it whether or not the defendant exercised due care and skill in the performance of the operation which is involved in this controversy, including in the term 'the performance of the operation' the use and handling of the sponges or pads. On this part of the case the question is, did or did he not use such reasonable care and skill? The court can not tell you what reasonable care and skill would require under any particular set of circumstances. He can only give you in charge the meaning of reasonable care and skill as the law defines it, and the test which the law gives for determining reasonable care and skill; but the jury must look at the facts and circumstances and determine from them whether or not the defendant did use such reasonable care and

skill." Error is specified, for the reason stated in the preceding ground, and because the removal of the pad or sponge from the body of a patient is not a part of the operation and does not require any surgical skill, and because the issue was not one of skill on the part of the defendant in the performance of the operation, but negligence in not removing the pad or sponge after the operation.

The court erred in the following charge: "In determining the question of reasonable care and skill, you may consider the place of the operation, the circumstances surrounding it, the situation of the defendant with respect to the operation, and all the facts and circumstances which throw light upon the question; the ultimate question as to this branch of the case being, did he or did he not use reasonable care and skill in the performance of the operation?" Error, because these considerations had nothing to do with whether or not the defendant was negligent in leaving the sponge or pad in the body. It was the duty of the defendant to remove the sponges or pads before closing the incision, and he could not shift that duty or the responsibility for failing to remove them.

The court erred in refusing to charge as follows: "Any custom or rule of practice of medicine or surgery, at the Grady Hospital or in this general community, must be reasonable, and must be in accordance with a reasonable degree of skill, diligence, caution, and care in treating and operating upon patients. It is for the jury to determine the reasonableness of such custom or rule of practice."

In overruling the motion the judge said, in part: "The plaintiff was a charity patient, on whom an operation was performed at the Grady Hospital, a hospital conducted by the City of Atlanta. The city controlled the place, furnished all the preparations, room, operating nurse, etc. Dr. Noble simply went in and performed operations there free of charge. The plaintiff alleged that an operation had been performed without the exercise of due care and skill, resulting in injury to her, and sued both Dr. Noble and the city. Later she dismissed the case as to the city, and proceeded against Dr. Noble alone. Ordinarily 'a person professing to practice surgery or the administering of medicine for a compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill will be a tort for which a recovery may be had.' Code, § 3831. This is the measure prescribed in this State, where a surgeon performs opera-

tions for pay. Certainly it can not be more stringent where he goes to a charity hospital and operates without charge. But inasmuch as human life may be at stake, I am of the opinion that, whether he charges or not, he himself is bound to have and exercise a reasonable degree of care and skill. Where he undertakes to operate for pay, it would doubtless be incumbent on him to provide suitable instruments, assistants, help (whether called nurse or not), and generally to exercise reasonable skill and care in the whole matter. How far he would be responsible for negligence of an assistant furnished by him need not be decided now. Clearly he would not be responsible for any negligence of assistants in which he took no part, or for accessories, etc., where neither assistants nor accessories were furnished by him but by a free hospital, and where this was known to the patient. In such a case he would be responsible for any failure to exercise a reasonable degree of care and skill himself. Movant's counsel in this motion for new trial seems to think that the charge placed upon them the burden of showing a failure to exercise reasonable care and also a failure to exercise reasonable skill. But the charge will show that this is a mistake. On the contrary, the burden was placed on the surgeon to exercise a reasonable degree of both care and skill, not on plaintiff to show a failure in both respects. . . Further, in the course of the trial, plaintiff's counsel produced as authority and read from Thomas on Negligence, page 1107. On that page will be found the following: 'Degree of skill and care required. — In the absence of a special contract otherwise providing, a physician and surgeon, whether acting gratuitously or otherwise (post, page 1109), is required to possess and *use* reasonable care and skill, and the same is measured by the degree of skill possessed, and skill and care exercised by the average of his profession in the locality of his residence, regard being had to the advanced state of the profession at the time (pp. 1108 – 1114). It has been held that it is a material issue, whether a surgeon is skillful in his profession, as well as whether he applied his skill in the particular case. Carpenter *v.* Blake, 50 N. Y. 696; 60 Barb. 488 (p. 1108); Mayo *v.* Wright, 63 Mich. 32 (p. 1113). But mere possession of skill is not sufficient, unless due care be taken to exercise it in the case in hand (pp. 1111, 1112). *Skill, how tested.* — The skillfulness of a physician should be tested by the recognized rules and doctrines of his own and not those of other schools

(post, pp. 1114, 1115).   It has been held, however, that clairvoyant physicians are adjudged by the skill required of a physician of good standing in the community (p. 1115).   Where a physician departs from the settled course of practice, it may be a question for a jury whether this would not constitute negligence.'"   .   .

"Movant's counsel now seek to draw some sort of distinction between the operation by the surgeon and his handling of the sponges or cloths placed inside the patient's body while the actual cutting proceeds, to catch the flow of blood or pus.   They claim that the handling of these sponges or gauze strips was no part of the operation at all; that the rule of care and skill required of the surgeon in operating had no application to the case; and that the charge was error.   Frankly, I fail to perceive the force of this point.   Dr. Noble undertook to do something as a surgeon.   The doing of that something involved the putting of pads or sponges inside the body of the patient, as well as the actual cutting open and sewing up. After the cutting and cleansing was over and the time to close the wound had arrived, the sponges were to be removed.   If he did not undertake to find and remove them as a surgeon, in what capacity was he acting?   Reasonable or ordinary care is not an absolute term, and has no arbitrary meaning.   If the care and skill required of him in doing this thing was not measured by the reasonable care and skill of a surgeon, what was the measure of it?   Was it that of an upholsterer stuffing or removing the stuffing of furniture? or that of a railroad employee operating a train? or that of a master toward his servant?   Or what was it?   It may seem at first blush (as perhaps it has impressed counsel) that if the surgeon put the sponges inside of a patient's body, care would require him to take them all out.   But when we remember that abdominal surgery, as now practiced, is largely a matter of a few years' growth, that until quite a recent period it was considered that an incision or wound which penetrated the abdominal cavity was certainly fatal, and that now such operations are very frequently performed; that the surgeon must make a small incision, not over a few inches in length, must insert and properly place a number of small sponges or gauze pads, sometimes as many as a dozen (as the evidence discloses), must, partly by sight and partly by feeling, reach the seat of the trouble and cut away the necessary parts, must tie up the loose ends, remove the sponges, and close and sew up the opening, arrang-

ing for proper drainage, and all this with the utmost promptness, for sometimes a slight delay may mean death, circumstances and surroundings must be considered in measuring duty. Some of the witnesses in this case testified that, with the surgeon's mind and attention riveted on the delicate and dangerous work before him, it was very difficult, if not impossible, to keep in his memory the exact number and placing of these sponges, that he must needs rely somewhat for the count upon another, that he exercised such care and skill as he could in finding and removing the sponges, and then had the operating nurse to aid him by keeping count of them; and one or more said that if the surgeon should stop at the critical moment to count sponges before closing the wound, the patient might die. This system may be imperfect. What system is not? But certainly it would never do to turn juries loose to fix some arbitrary standard — each jury for itself — of how abdominal surgery ought to be performed, regardless of how the surgeons themselves had found it safest and best to do; nor, which would amount to the same thing, to say whether a method of performing an operation, even if universally adopted by the most skillful surgeons, seems reasonable to the jurors' minds or not. This is especially true where the practice of surgery is permitted only to those who have studied the recognized methods, have had certain training, and have been found to be sufficiently proficient, and have been licensed. If the practice of surgery were thrown open to everybody to act on his general judgment, without skill or training, perhaps the rule might be different. The average juror might, in such a supposed state of affairs (if it can be supposed) be able to judge of the mode of performing operations as well as the practitioner of whom no training, skill, or knowledge was required. If all surgeons had perfect reason and perfect skill, there should be no failures. Medical and surgical science must advance gradually. It has its errors and its failings. But it would hardly do for every doctor who gives a prescription, or every surgeon who performs an operation, to do so at the risk that if the result is not good, a jury may mulct him in damages, if they should think the method of treatment or of conduct was unreasonable, although it was the well-recognized and universal method.

" Plaintiff's attorneys evidently thought, when they brought the suit, that the use of the sponges or pads was a part of the opera-

tion. Their declaration is based on that idea. They no doubt then had before them the section of code above referred to, which does not say that the surgeon shall bring to a certain operation or part of an operation a reasonable degree of care and skill, but that he shall bring this to 'the exercise of his profession.' If Dr. Noble was not exercising his profession in the handling and using, putting in and placing, and taking out of these pads, as well as in the cutting and sewing up, it would be a subject of some interest to know what he was doing. Even if the law had limited the rule to the 'operation,' does not that term include more than merely making an incision and closing it? Are not the handling of instruments, placing the patient, use of bandages or pads, removal of necessary parts, replacing them in position, placing ligatures, cleansing the wound, closing it, etc., all parts of the operation? Suppose the surgeon had left a piece of the thread used in sewing up the wound in it, would it be said, that was no part of the operation; it was simply leaving a string?"

*Walter P. Andrews* and *Westmoreland Brothers*, for plaintiff, cited Civil Code, § 3831; Century Dict. definition of "skill"; 75 N. Y. 12; 39 Mo. App. 233; 78 Fed. 442; 67 Minn. 46, s. c. 69 N. W. 480; 84 Me. 497; 4 Fost. & F. 977; 101 Iowa, 629, s. c. 37 L. R. A. 830, and notes; 166 Mass. 585; 90 Mo. 487; 60 Barb. 488; 6 Kan. 46; 36 Neb. 794; 100 Pa. St. 127; 4 N. Y. St. R. 876; 47 N. Y. St. R. 483, s. c. 17 N. Y. Supp. 131; 45 N. Y. St. R. 165, s. c. 17 N. Y. Supp. 815; 136 N. Y. 1; 71 *Ga.* 424 (14); 87 *Ga.* 378 (2); 25 App. Div. (N. Y.) 522; 111 *Ga.* 206.

*Smith, Hammond & Smith, J. T. Pendleton,* and *J. A. Anderson,* for defendant, cited Civil Code, § 3831; 114 *Ga.* 639; 30 *Ga.* 245; Thomas, Neg. 1107 et seq.; 95 Ind. 379; 23 Ill. 385; 17 Ohio St. 253; 75 Minn. 255, s. c. 77 N. W. 813; 3 Oregon, 139.

Совв, J. This was an action against a surgeon for malpractice. The plaintiff alleged that the defendant had performed a surgical operation upon her person, which required an opening to be made in the abdomen, and that it was necessary in the performance of the operation to insert into her body through the opening certain sponges or pads for the purpose of absorbing the blood and pus in the cavity, which sponges or pads should remain in the body while the operation was being performed but should be removed there-

from before the opening was closed; that the defendant negligently and carelessly failed to remove one of these sponges and closed the opening, allowing the sponge to remain in her body; that it remained there for more than a year, and finally passed out of her body through the rectum, having passed into the rectum through a fistula which the sponge had caused; that she suffered great pain during the time that the sponge was in her body and at the time it was being passed therefrom; that on account of the negligence of the defendant, above referred to, she is now and will always be a complete physical wreck. The defendant answered, denying all charges of negligence. The trial resulted in a verdict for the defendant. The case is here upon a bill of exceptions assigning error upon a judgment overruling a motion for a new trial filed by the plaintiff.

1. The motion for a new trial contains several assignments of error upon portions of the charge of the judge. The charges complained of were, in substance, that if the jury believed the pad or sponge was in fact left in the plaintiff's body, then they "would determine whether or not it was so left by reason of the want of due care and skill, or the exercise of due care and skill, on the part of the defendant;" that the defendant owed the plaintiff the duty of exercising "reasonable care and skill" in performing the operation, including in that expression, not only the opening of the body and the removal of the affected parts, but also the use and handling of the sponges or pads. The plaintiff contends that these charges were erroneous, for the reason that they compelled the jury to return a verdict in favor of the defendant, unless they found under the evidence that the defendant was lacking in both care and skill, when it was never contended that the defendant was lacking in professional skill, but it was only contended that he was liable on account of his failure to carefully perform his duty on the particular occasion in question; that the removal of the pads or sponges from the body of a patient is not a part of the operation and does not require any surgical skill; the failure to remove the sponge not being due to any want of skill on the part of the defendant but due, as plaintiff contends, simply to his carelessness and negligence in not removing the same from the body. The plaintiff contended that the issue was not one of skill on the part of the defendant in the performance of the operation, but negligence in not removing the pad or sponge after the operation. The code declares that a person pro-

fessing to practice surgery must bring to the exercise of his profession a reasonable degree of care and skill, and that any injury resulting from a want of such care and skill will be a tort for which a recovery may be had. Civil Code, § 3831. Surgeons "are bound to exercise reasonable and ordinary care, skill, and diligence, but that is the extent of their liability. The burden of proof is upon the plaintiff in actions for malpractice to show that there was a want of due care, skill, and diligence." "The reasonable and ordinary care, skill, and diligence which the law requires of physicians and surgeons are such as those in the same general line of practice, in the same general locality, ordinarily have and exercise in like cases." "Surgeons should, however, keep up with the latest advance in medical science, and use the latest and most improved methods and appliances, having regard to the general practice of the profession in the locality where they practice; and it is a question for the jury to decide from all the circumstances of the case whether the . . surgeon has done his duty in that respect." Taylor's Med. Jur. (Clark Bell) 356–7, and cases cited. See also Thomas, Neg. 1107 et seq.; *Smith* v. *Overby*, 30 *Ga.* 241, 245; *Georgia Northern Ry. Co.* v. *Ingram*, 114 *Ga.* 639. The plaintiff's contention is that the charge of the judge, properly construed, places upon her the burden of showing, not only that the defendant was lacking in care, but that he was lacking in skill. Even if this be a proper construction to be placed upon the charge, was this an erroneous instruction? The surgeon belongs to one of the learned professions, and he is required to bring to the exercise of his profession not only due care but also due skill. Skill, in the sense in which it is here used, includes not only the knowledge or information which the surgeon has in reference to the propriety or desirability of a given operation, but also the ability to perform the operation in a proper and approved way. The word "skill" has been defined to be "the familiar knowledge of any art or science, united with readiness and dexterity in execution or performance, or in the application of the art or science to particular purposes; . . as, the skill of a . . surgeon," etc. Webster's Int. Dict.

While it was admitted that the defendant possessed skill in the sense of knowledge or information in reference to the surgical operation in question, it was of course not admitted that he had performed each and every part of the operation in exactly the manner

which this knowledge or information on his part would have required. We say this was not admitted, because if it had been the plaintiff would have admitted herself out of court. The argument is, that when a surgical operation of the character involved in the present case is about to be performed, the time when the skill of the surgeon is expected to become active is when the opening is made in the body, and continues while the sponges or pads are being placed in the body, but that when the affected portion of the body, whether it be an unnatural growth or a part of the human system, has been removed and all precautions taken to prevent hemorrhage, and the moment arrives for the sponges to be removed, the operation is at an end, and no longer is the surgeon in a position where the knowledge or information which makes him a man of skill is required to be exercised, and that when the pads or sponges are being removed he is no longer the man of skill exercising skill, but he is simply the ordinary man, and is required to exercise due care and diligence only. We must admit that we are unable to apprehend any clear distinction between the duty of the surgeon at the different stages of what, for want of a better term, we call the operation. It seems to us that the operation begins when the opening is made into the body and ends when this opening has been closed in a proper way after all appliances necessary to the successful operation have been removed from the body. From the time the surgeon opens with his knife the body of his patient until he closes in a proper way the wound thus made, the law imposes upon him the duty of exercising not only due care but due skill as well. During the entire time he must not only know what to do, but he must do it in a careful and skillful manner. It was conceded in the argument that the placing of the pads or sponges in the body required the exercise of skill. It seems to us that the removal of them from the body also requires some degree of skill. It at least requires a surgeon to perform this service, and if this is admitted, it is at the same time admitted that skill is required in the performance of the work. We do not suppose that any one would contend for a moment that a surgeon would be authorized to leave this part of the work, even if not a part of the operation or necessarily incident thereto, to any one who was not skilled in the science of surgery. A knowledge of the human body is necessary in order to determine where these pads or sponges should be placed when the operation

is about to be performed. A like knowledge of the human body is also necessary to determine when all of them have been removed. . The surgeon who testified in behalf of the plaintiff said, during the course of his testimony, "It may seem strange, but it is a very difficult matter to find a sponge; it is an easy matter to overlook it." This testimony clearly shows that in the removal of the sponges which have been placed in the human body the person seeking to remove the same must be possessed of the requisite knowledge and information to find where they may have been placed or may have gone during the performance of the operation, and this knowledge or information on the part of the surgeon is what is called skill. The removal of the sponges is a part of the operation; it is a part which requires the exercise of skill; and the charges complained of were not, in our opinion, erroneous.

2. Complaint is made that the court in its charge to the jury called their attention to the fact that when they were empaneled they took an oath to try cases and render verdicts according to the law as given them in charge and the opinion they entertained of the evidence, and that it was their duty to take the law from the court; that they were not the judges of the law in any such sense as to authorize them to set up an opinion on their part as to what was the law, in conflict with the law as given them from the bench. The complaint is not that all that the judge said was not true, for this is admitted, but that it was unnecessary on his part to be reminding the jury that they were under oath and that what he said about the law was conclusive upon them. The contention is that the charge was calculated to embarrass the jury, and did embarrass them in considering the case. We find nothing in the charge complained of which is not a correct statement of the law, and we are at a loss to understand why it is that the fact that the jury are reminded that they are under oath to take the law from the court and that they should comply with their oaths would have the effect of embarrassing a conscientious jury, who should, above all things, desire to be instructed in reference to the delicate duties which are imposed upon them as men unlearned in the law, and unaccustomed, from necessity, to the decision of the intricate questions arising under the evidence, which can only be solved by looking to the judge as the legal exponent of the law of the case. In this day, when oaths administered to jurors, witnesses, and others are seldom ad-

ministered with that degree of solemnity which should always accompany the administration of an oath, it is not inappropriate to remind those who have taken an oath, many times in a formal and perfunctory way, that the words of the oath are binding upon their consciences. The careless and hasty way in which jurors, witnesses, and other persons to whom oaths are administered in court are sworn in this busy day of the world is not calculated to impress upon the mind of him who takes an oath the solemnity of the transaction in which he is taking part. The judge must have had some good reason for calling the attention of the jury to their oaths in this case; but in any event, whether there was such reason or not, there was no error in what he said to them.

3. Complaint is also made in one ground of the motion for a new trial that the court failed to charge the jury on the subject of the plaintiff's alleged claim for damages growing out of the failure of the defendant to attend her, upon her request, after the operation had been performed. Even if the petition can be properly construed to contain any such claim for damages, the judge in a note to this ground of the motion states that this claim was not insisted on at the trial, and that his failure to refer to the same was due to this reason. This being the case, the judge was authorized to treat this claim for damages as having been abandoned, and it was not error to fail to notice the same in his charge.

The evidence fully authorized the verdict. The defendant testified positively that he removed all the pads; that he reached down in the cavity as far as he could reach, searched all over, and removed all of the pads; that he knew he got them all out, because he went thoroughly through the cavity and found nothing there; that he was satisfied he had found all that were placed therein. In addition to this, the testimony of numerous surgeons was to the effect that if the pad had been left in the body as claimed by the plaintiff, it would have resulted in her death within a short time after the operation had been performed. The charge of the judge fairly submitted to the jury all of the issues involved in the case. The charges complained of were not erroneous, and the requests to charge, so far as they were legal and pertinent, were covered by the general charge. The court did not err in overruling the motion for a new trial. With the order overruling the motion the learned judge who tried this case filed a written opinion, which discusses

elaborately the questions dealt with by this court, and the reporter has been requested to embody in the official report so much of this opinion as relates to the questions above discussed.

*Judgment affirmed.    All the Justices concurring, except Little, J., absent.*