## 628.   SOUTHERN RAILWAY CO. *v.* TANKERSLEY.

1. Whether a person was injured, and the extent of his injury and consequent suffering, is entirely a question for the jury; and where he testifies that he was injured and suffered, the jury can accept and credit his testimony based on his knowledge, in preference to the evidence of "a whole college of physicians," that he was not injured.

2. Whether an ordinarily prudent person would attempt to cross a railroad track at a certain time and place, without using his sense of sight. or hearing in an effort to discover the approach of a train, is a question of fact to be determined by the jury under the circumstances of the particular case. The mere failure to stop, look, and listen, by one who is about to cross a railroad track at a public crossing, is not, in this State, negligence per se.

3. There is no material variance between the allegations and the proof, as to how the injury occurred.

4. Where the negligent running of a locomotive and train in approaching a public crossing frightened a horse attached to a vehicle, on or near the crossing, causing him to run away, and the occupant of the vehicle was either thrown out or jumped out and was injured, the efficient proximate cause of his injury was the negligent conduct of those in charge of the locomotive and train, and not the fright and running away of the animal.

Action for damages, from city court of Hall county—Judge Boone.   June 1, 1907.

Submitted November 11, 1907.—Decided February 11, 1908.

*John J. Strickland, Ed. Quillian,* for plaintiff in error.

*Thompson & Bell,* contra.

HILL, C. J.   Tankersley brought suit in the city court of Hall county against the Southern Railway Company, for damages resulting from personal injuries.   The jury found a verdict in his favor for $1,000, and the defendant's motion for a new trial was overruled.   The petition, in substance, alleges, that on the day of the injury the plaintiff and his two children were approaching a public crossing in the city of Gainesville, in a one-horse wagon drawn by a mule; that while they were crossing the track, the defendant's train suddenly and without warning ran upon him, frightened the mule he was driving, and caused the mule to dash off down the railroad track in front of the train; that the wagon in which he was riding was overturned, and that he was thrown with great violence on the ground and was seriously and permanently injured.   He alleges that the defendant was negligent in that its train approached said crossing without any ring-

ing of the bell and without giving any other signal, and was going at a very high rate of speed. The railroad crossing in question is within the corporate limits of Gainesville and on a public street of that city. He alleges that he was exercising all ordinary care and diligence and did not any way contribute to his injury. The evidence for the plaintiff in support of these material allegations is in substance as follows: The plaintiff, with his two children, in a one-horse wagon drawn by a mule, was, on the day of his injury, going towards Gainesville, on a public street known as Athens street. As he approached the railroad track at the public crossing, he looked and listened, and neither heard nor saw any train, and there was no whistle blown nor bell rung. Two buggies had just preceded him in crossing the track at the public crossing. The first notice he had of the approach of the train, it dashed through a cut near the crossing and over the crossing. His mule was in the middle of the road, almost to the crossing, before he discovered the train, and the mule wheeled to the left and ran down the track, by the side of the track, and the right wheel ran upon the cross-ties and the left wheel was on the ground. The wagon was in an inclined position, and "I jumped to the left and landed on the ground. The train went on and never stopped." He described to the jury the extent of his injuries and his suffering therefrom. We will take up the grounds of the motion for a new trial as insisted on in the brief of counsel for the plaintiff in error.

1. Counsel for the plaintiff in error contend that the evidence shows beyond question that the plaintiff was not injured, this contention being based upon the testimony of several physicians who examined him immediately after the injury, and who testified that they did not discover that he was injured. In reply it need only be said that the plaintiff himself swore to the jury that he was injured, describing the character and extent of his injuries and the extent of his suffering. This testimony of the plaintiff was believed by the jury. They had the right to believe it notwithstanding the adverse testimony of the physicians. The plaintiff knew whether he was hurt and whether he suffered, and, if entitled to credit, his knowledge would and ought to have outweighed the opinion of "a whole college of physicians." It may be added that there is other evidence in the record which corroborated the

plaintiff as to his injuries. This, however, is not a matter for this court, but was a matter for the twelve jurors and the trial judge. *City of Atlanta* v. *Champe, 66 Ga.* 663.

2. It is insisted in the next place that under the plaintiff's own evidence the verdict in his favor was unauthorized. This contention is based upon the following statement made by him in his cross-examination: "I knew there was a crossing there and that trains ran on that road. I knew they ran fast and one was liable to be coming. I knew there was a rise on my right as I came up; that there was an embankment. If I was close up to the crossing and had stopped my mule, I could have seen the train coming one half mile. I did not go on the crossing. Right at the track I could have seen it a half mile." It is insisted that this testimony shows that the plaintiff could have discovered the train had he tried; in other words, had he used his senses of sight or hearing, he could have discovered the train, and, failing to do this, he took the consequences of going on to the crossing, and can not recover. It is not the law in this State that a mere failure to stop, look, and listen, by one who is about to cross a railroad track at a public crossing, constitutes such negligence as will prevent a recovery. Whether an ordinarily prudent person would attempt to cross a railroad track without using his sense of sight or hearing is a question of fact, to be determined by the jury in each particular case. *Western & Atlantic R. Co.* v. *Ferguson, 113 Ga.* 711 (39 S. E. 306, 54 L. R. A. 802), and cases cited; 2 Amer. & Eng. Enc. Law (2d ed.), 427 et seq. But even if a person in a particular case was negligent, under the circumstances, in not stopping and using his sense of sight or hearing before attempting to cross a track at a railroad crossing, his failure to do so would not necessarily prevent a recovery; for if the evidence, in addition to showing his negligence, showed that the railroad company was negligent in approaching the crossing without giving the signals or slacking the speed as required by law, a recovery might be had, the damages to be diminished according to the negligence attributable to each. Civil Code, § 3830. In this case, however, the plaintiff testifies that in approaching the crossing, while he did not stop, he did look and listen, to find out if any train was approaching the crossing.

3. Plaintiff in error contends that there could have been **no**

lawful recovery, because of a fatal variance between the allegations and the proof. The petition alleges, that the plaintiff was on the crossing and in the act of crossing, when the train approached suddenly, frightening his mule, and the mule ran down the track (meaning down on the track itself); and that the wagon was overturned and he was thrown out of the same. The evidence of the plaintiff, pertinent to these allegations, is, that the mule was not right on the track, but was almost to the crossing, and he wheeled to the left and ran down the track, by the side of the track, and "I jumped to the left and jerked the girls; we all went out together, and landed on the ground." It is contended that there is here presented a fatal variance as to the place where the mule was when the train suddenly approached, in what direction the mule ran, and how the plaintiff got out of the wagon; and the court was requested to charge in effect that such variance was fatal and would prevent a recovery. We do not concur in this view. On the contrary, we think that the allegations and the proof on this point are substantially in accord. How can it be material whether the mule was on the track or near the track; whether, when frightened, he ran down *on* the track or *alongside* the track; or whether the plaintiff *fell* out of the wagon or *jumped* out of the wagon? The variance, to be fatal, must be on material questions. The law demands unity only in essentials, and is satisfied with substance.

4. We can find no merit in the exception based on the suggestion that the negligent running of the train in approaching the crossing was not the proximate cause of the injury, but that the proximate cause was the frightened and unruly mule; nor in the kindred exception, that the court erred in giving in charge § 2321 of the Civil Code, because the evidence shows that if the plaintiff was injured at all, it was not by the running of cars, but by the running of the mule. A great deal of metaphysical nicety has been indulged in by text-writers and by courts on the subject of proximate cause, but it has never been doubted that where one's horse attached to a vehicle becomes frightened, at or near a public crossing, by the negligent running of the train in approaching the crossing, and from fright runs away, and either throws the occupant out of the vehicle or causes him to jump out, the consequent injury is proximately caused by the negligent running

of the train. Proximate cause simply means the efficient negligent cause. In this case it can not be said that the mule was guilty of negligence in becoming frightened and running away. This was only the natural sequence of the negligent causation. The efficient human agency which frightened the mule was the negligent conduct of those in charge of defendant's train in approaching the crossing. By proximate cause is not meant the last act or cause, or the nearest act to the injury, but such act wanting in ordinary care as actively aided in producing the injury as a direct and existing cause. But it is unnecessary to discuss this question, for it has been repeatedly held by the Supreme Court that the negligent running of a train in approaching a public crossing was an efficient proximate cause of an injury received by one at or near the crossing, although the actual injury may have been due to the conduct of a horse or mule, caused by fright from the negligent running of the train. Section 2321 of the Civil Code, which the court gave in charge, is applicable to any injury caused by the running of a locomotive or cars, although such injury is not due to any physical contact with the running cars or locomotive; and the section was entirely appropriate to the facts of this case.

There was no error of law committed by the trial court, and the verdict is warranted by the evidence.　　　*Judgment affirmed.*