45027. ANDERSON v. CRIPPEN et al.

ARGUED JANUARY 13, 1970—DECIDED MAY 20, 1970—
REHEARING DENIED JUNE 15, 1970.

*Thomas M. Strickland,* for appellant.

*McClure, Ramsay & Struble, Robert B. Struble,* for appellee.

DEEN, Judge. The general rule is that since the jury is not bound by opinion testimony, this type of evidence may never serve as the basis for the grant of a summary judgment whether contradicted or not. *Ginn v. Morgan,* 225 Ga. 192 (167 SE2d 393); *Harrison v. Tuggle,* 225 Ga. 211 (167 SE2d 395). It is here contended that all malpractice actions fall within this category. In *Truluck v. Funderburk,* 119 Ga. App. 734 (168 SE2d 657) the court questioned *Jackson v. Tucker,* 118 Ga. App. 693 (165 SE2d 466) where the grant of summary judgment to a defendant physician had been affirmed, and reversed the grant in the case under consideration because "the opinion testimony in the case sub judice would not be sufficient to authorize the granting of the defendant's motion for summary judgment." This was followed in *Williams v. Melton,* 120 Ga. App. 466 (171 SE2d 318) in a malpractice action involving a question of improper diagnosis, failure to follow conservative treatment, and failure to advise the patient of the risks involved in surgery. These cases illustrate situations where a jury would ultimately have to make a choice of inference as to negligence or non-negligence based on medical opinion evidence as to what procedures would constitute the exercise of reasonable care and skill in diagnosis and treatment, and thus would necessarily be dependent on the *opinions* of doctors as to what was proper,

and this regardless of the fact that we have many times said that the ultimate fact of diligence or negligence is for the jury and may not be the subject of direct testimony.

The present case raises the question of whether every malpractice action ultimately depends on jury inferences from *opinions,* so that it may be said that under no circumstances can summary judgment be granted a defendant physician because whether or not he was negligent in diagnosis or treatment depends on the *opinions* of other doctors, and the defendant cannot show that it would be impossible for the plaintiff at the trial to produce an expert witness in whose opinion the defendant was at fault. We do not apprehend this to be the law. Expert medical testimony may or may not be opinion testimony, and where a difference of opinion is shown the matter is of course for the jury. But no case has gone so far as to say that the defendant has the burden of showing that no contrary opinion may exist. On the contrary, in a malpractice trial the plaintiff must come forward with some evidence from which negligence may be inferred or he fails to make a prima facie case. *Shea v. Phillips,* 213 Ga. 269 (3) (98 SE2d 552). Mere failure to effect a cure is not of itself any evidence of negligence. *Specht v. Gaines,* 65 Ga. App. 782 (16 SE2d 507). "In an action brought by a patient against his physician or surgeon for malpractice, the presumption is that the medical or surgical services were performed in an ordinarily skilful manner, and the burden is on the one receiving the services to show a want of due care, skill and diligence. *Ga. Northern Ry. Co. v. Ingram,* 114 Ga. 639, 640 (40 SE 708); *Akridge v. Noble,* 114 Ga. 949, 958 (41 SE 78); *Fincher v. Davis,* 27 Ga. App. 494 (2) (108 SE 905); 21 RCL 406; Taylor, Med. Jur. 356. And in such a case the proof ordinarily required to overcome such presumption of care, skill and diligence is that given by physicians or surgeons as expert witnesses. *Pilgrim v. Landham,* 63 Ga. App. 451 (4) (11 SE2d 420); *Howell v. Jackson,* 65 Ga. App. 422 (16 SE2d 45); 70 CJS 1006-1008, § 62; 41 AmJur 238, § 128." *Shea v. Phillips,* supra, p. 271. Where the movant in summary judgment shows facts from which the only inference reasonably to be drawn supports the initial presumption that a proper degree of care and skill was used, or as in this particular case, that no negligence on the part of the physician was

the cause of the failure of the fractured bone ends to knit together, and where the defendant testified positively that he had x-rayed the break and that the bone erosion around the screw was not caused by faulty location of the screw, as contended by the plaintiff, the requirement that on medical questions the proper standard of measurement must be established by the testimony of medical experts (*Murphy v. Little,* 112 Ga. App. 517, 519 (145 SE2d 760)) has been met, and the plaintiff must of necessity offer *some* evidence, opinion or otherwise, or suffer judgment against him. It is true that the distinction between fact and opinion is a relative one. As stated in McCormick on Evidence, § 11, p. 22: "By the middle of the 1800's the disparagement of 'mere opinion' in the sense of a notion or conjecture not rooted in observation had emerged into a much more questionable canon of exclusion. This is the doctrine that witnesses generally give the 'facts' and not their 'inferences, conclusions, or opinions'. This classic formula, based as it is on the assumption that 'fact' and 'opinion' stand in contrast and hence are readily distinguishable, has proven the clumsiest of all the tools furnished the judge for regulating the examination of witnesses. It is clumsy because its basic assumption is an illusion." In the testimony of medical experts it is easy to identify certain types of opinion evidence, usually couched in the form of answers to hypothetical questions. But other testimony, such as a description of procedures in general use under a given set of circumstances, while it is expert testimony because in a field as to which the layman has no special knowledge, is still primarily a question of fact rather than opinion, and from this sort of testimony the jury must draw its own inference as to whether the defendant used that degree of care and skill which is ordinarily employed by the profession generally under the given set of circumstances. The jury may also, but not necessarily, be aided by the direct personal opinions of the same experts when directly called upon to evaluate a given procedure as good or bad. Malpractice cases almost always depend on expert medical testimony; they do not necessarily, however, depend on the personal opinion of the witness, no matter how expert he may be. Where the evidence presents no conflict, and there is nothing from which an inference of negligence can be drawn, the decision is for the

court and not the jury *Wimpy v. Rogers,* 58 Ga. App. 67 (197 SE 656); *Shea v. Phillips,* supra.

*Judgment affirmed. Bell, C. J., Jordan, P. J., Hall, P. J., and Eberhardt, J., concur. Pannell, Quillian, Whitman and Evans, JJ., dissent.*

PANNELL, Judge, dissenting. 1. I agree with the dissent of Judge Evans. This court has been very inconsistent in its application of the rule that the movant in the motion for summary judgment has the burden of showing there is no issue of material fact to be tried by a jury and that all of the evidence produced is construed most strongly against the movant; and that this burden applies to a defendant movant even though the defendant did not have the burden on the actual trial of the case and that such defendant movant is not entitled to a summary judgment merely because under the evidence appearing on the summary judgment hearing the plaintiff has failed to prove its case. The analogy to a directed verdict (where on the trial a plaintiff fails to prove its case) does not apply under these circumstances. "It has oft times been held that a motion for summary judgment is analogous to a motion for a directed verdict. 'The operation of the motions is, then, essentially the same in reference to those issues upon which the movant for summary judgment would have, at trial, the burden of proof. The operation is, however, somewhat different where the motions are made by the opponent of the party with the trial burden. Assume, for example, that the movant is the defendant who is attacking the merits of plaintiff's claim. On motion for directed verdict the party resisting the motion, i. e., the plaintiff, has had to and has presented his evidence, which is then scrutinized by the motion. On motion for summary judgment by a defendant on the ground that plaintiff has no valid claim, the defendant, as the moving party, has the burden of producing evidence, of the necessary certitude, which negatives the opposing party's (plaintiff's) claim. This is true because the burden to show that there is no genuine issue of material fact rests on the party moving for summary judgment whether he or his opponent would at trial have the burden of proof on the issue concerned; and rests on him whether he is by it required to show the existence or nonexistence of facts.' Moore's Federal Practice, Vol. 6 (2d Ed.), par.

56.15[3], pp. 2341-2343. It appears, therefore, that the grant of a summary judgment may be improper where, at the trial, the grant of a directed verdict may be proper. Armco Steel Corp. v. Realty Investment Co., 273 F2d 483." *Southern Bell Tel. & Tel. Co. v. Beaver,* 120 Ga. App. 420 (3) (170 SE2d 737). See also *Continental Assurance Co. v. Rothell,* 121 Ga. App. 868.

2. Even should we concede, however, that the pleading of the plaintiff has been pierced because the evidence of the defendant might *authorize* a jury to find against the plaintiff and for that reason the plaintiff must come forward with evidence (see *General Gas Corp. v. Carn,* 103 Ga. App. 542, 545 (120 SE2d 156); *Germaine v. Webster's Shopping Center,* 116 Ga. App. 547 (158 SE2d 682); *Jerry Lipps, Inc. v. Lewallen,* 118 Ga. App. 479 (164 SE2d 232)), the defendant is not entitled to a summary judgment unless the materials adduced on the motion for summary judgment *demand* a finding in his favor. *Moore v. Jones,* 120 Ga. App. 521, 522 (171 SE2d 390).

The petition alleged "[t]he plaintiff was taken to surgery for an open reduction and fixation with a metal plate and screws on June 22, 1967, by the defendant, and said metal plate was affixed to the right radius with four screws, one of which was located in or so near the fractured portion of said radius that the same eroded allowing movement to occur within the case in which the plaintiff's wrist was placed which prevented the same from healing correctly." While the defendant at one point testified that the insertion of the screws in the break itself would have no particular effect as screws are sometimes placed through breaks as "[w]here you have an apposition fracture in order to keep both areas of the fracture together, where you have an overlapping apposition like that, screws go through the fracture to the other side, but in this particular instance, to the best of my knowledge, or from the appearance of the x-rays, it shows the screws did not go through the fracture site," the defendant also testified that the fracture involved here was not an apposition fracture and it was not necessary to pass the screws through the break. The defendant also subsequently testified in reference to an x-ray taken in the later stages of the treatment as follows: "At that time, it shows no indication of union, no evidence of healing of the fracture and it

is noted that none of the screws appear to have passed through or down across the area of the fracture, I beg your pardon I mis-read that, *it says that one of the screws appears to pass directly across the area of fracture and there is resorption of the bone around the screw, this may be contributing to the failure to heal."* And when asked if there was any explanation for that, answered: "Well, now, very likely, in all probability it appears that there is resorption of the bone around the screw and it drops at the area of the fracture because there is no support because the bone does not absorb and there is the reaction when you use metal, this is one of the problems causing a nonunion and in a—with the metal of the plate that this bone will dissolve at the soft part, and or the screw site and moved into the fracture site, however I can not say on the original x-ray that the screw originally passed through the fracture site, I am sure that it did not because I would have been able to have turned it." This evidence certainly did not demand a finding against the allegations of paragraph 4 of the petition, even should we assume no opinion evidence was involved at all.

In my opinion, the trial court erred in granting a motion for summary judgment.

I am authorized to state that Judge Quillian joins in this dissent.

WHITMAN, Judge, dissenting. I dissent from the majority opinion which affirms the grant of motion for summary judgment in this case. In my opinion the judgment of the trial court should be reversed. I regard the following cases as controlling: *Georgia Osteopathic Hospital, v. Davidson,* 121 Ga. App. 371 (173 SE2d 734), and cites; s. c., 121 Ga. App. 372 (173 SE2d 735). In each of those cases certiorari was denied by the Supreme Court of Georgia on April 23, 1970.

EVANS, Judge, dissenting. I dissent from the majority opinion which affirms the grant of motion for summary judgment in this case. The judgment should be reversed. Here a physician was sued for malpractice, and contends that he pierced the allegations of plaintiff's petition solely upon his own depositions.

The burden was on defendant to "pierce the allegations of plaintiff's petition" before being entitled to summary judgment. Paragraph 6 of plaintiff's petition alleged: "That said reduction healed

completely unsatisfactorily and out of alignment due to the defendant's negligence in his failing to follow accepted standards in practice in the treatment of said reduction as aforesaid." Thereafter, in paragraphs 7, 8, 9 and 10 of the petition, the plaintiff alleged that the defendant physician was negligent in such treatment of plaintiff. Unless there was satisfactory and uncontradicted evidence to refute plaintiff's allegations of defendant physician's negligence, and to show that the physician did "follow accepted standards in practice in the treatment of said reduction" he would not be entitled to a summary judgment. Contrary to the posture of the case when before a jury for final trial, on summary judgment the plaintiff had the right to rely upon his allegations, even though setting forth conclusions, as absolutely true; and the burden was on the defendant to introduce evidence to the contrary, which was not done in this case. In motions for summary judgment, all doubts as to the existence of an issue are to be resolved against the movant; and the opposing party is to be given the benefit of favorable inferences. See *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 4 (126 SE2d 442). Absolutely no evidence of any kind, including the defendant physician's depositions, refuted plaintiff's allegation that the defendant physician was negligent and that he failed to follow accepted standards in practice in treating plaintiff. The defendant physician's depositions did not even refer to "negligence" or "accepted standards in practice." It was his burden to do so and to show that he had followed accepted standards in practice, and that he was not negligent, and to pierce the allegations of paragraph 6 of plaintiff's petition. Plaintiff had no burden whatever except to "allege" his contentions in such respect. The defendant physician did testify as to the way and manner in which he treated plaintiff but offered no criterion by which it could be determined whether his services were performed "in an ordinarily skilful manner," which is the test in malpractice cases. See *Truluck v. Funderburk*, 119 G. App. 734 (168 SE2d 657). It has been held time and again in recent months by the Supreme Court of Georgia, and by this court, that opinion evidence may be used to make a jury issue; but it cannot serve the purpose of dissipating a jury issue; and that summary judgments cannot be rendered on opinion testimony alone. See *Truluck v. Funderburk*,

supra; *Williams v. Melton,* 120 Ga. App. 466 (171 SE2d 318); *Ginn v. Morgan,* 225 Ga. 192 (2) (167 SE2d 393); and *Harrison v. Tuggle,* 225 Ga. 211 (2) (167 SE2d 395).

The weight to be given opinion evidence, if any, has always been exclusively placed within the province of a jury. In the case of *Ocean Accident &c. Corp. v. Lane,* 64 Ga. App. 149 (1) (12 SE2d 413), it is held: "The opinion of an expert witness is not conclusive upon the jury. Such testimony is intended to aid them in coming to a correct conclusion upon the subject; but the jury is not bound by such opinion, and can disregard it. The jury may deal with such testimony as they see fit, giving credence to it or not," citing *Manley v. State,* 166 Ga. 563, 566 (19) (144 SE 170); *Liberty Mut. Ins. Co. v. Williams,* 44 Ga. App. 452 (161 SE 853). Only a jury may credit such testimony or completely disregard it, for that power is not lodged with a trial judge.

The majority opinion correctly holds: " . . . in a malpractice trial the plaintiff must come forward with some evidence from which negligence may be inferred or he fails to make a prima facie case and must be nonsuited. *Shea v. Phillips,* 213 Ga. 269 (3) (98 SE2d 552)." But that means the plaintiff has that burden when he is before a jury, not when he is respondent in a motion for summary judgment. The majority opinion also correctly holds: "In an action brought by a patient against his physician or surgeon for malpractice, the presumption is that the medical or surgical services were performed in an ordinarily skilful manner, and the burden is on the one receiving the services to show a want of due care, skill and diligence," and many cases are cited in support thereof. But, there is no such presumption in favor of the physician in the trial of his motion for summary judgment. That presumption cannot be applied until he is before a jury or other fact-facting body. The rule laid down in *Holland v. Sanfax Corp.,* 106 Ga. App. 1, supra, controls in motions for summary judgment.

The majority opinion correctly states: "Where the evidence presents no conflict, and there is nothing from which an inference of negligence can be drawn, the decision is for the court and not the jury. *Wimpy v. Rogers,* 58 Ga. App. 67 (197 SE 656); *Shea v. Phillips,* supra." But this decision was written long before the advent of the comparatively recent statutes on motion for summary judg-

ment and has absolutely no application to such motions. The majority opinion holds that the depositions of the defendant physician were sufficient in and of themselves to show the physician used ordinary skill, even though he did not specifically so testify.

I have a different concept of such depositions. First of all: where a party himself relies solely upon his own testimony, a jury is not required to believe him; and, a fortiori, a judge in a summary judgment case would not be required to believe him. See *Laramore v. Minish,* 43 Ga. 282, 287; *Penny v. Vincent,* 49 Ga. 473, 475; *Armstrong v. Ballew,* 118 Ga. 168 (2) (44 SE 996); *Bell v. Proctor,* 212 Ga. 325, 327 (92 SE2d 514), citing *Amis v. Cameron,* 55 Ga. 449 (3); *Hinchcliffe v. Pinson,* 87 Ga. App. 526 (74 SE2d 497).

Next, much of his testimony was premised upon what other physicians had told him respecting their evaluation of the case, and, of course, that was hearsay and not admissible in evidence, more especially in motions for summary judgment. Illustrative of the unsatisfactory nature of his testimony, we quote: "A. Well, at that time we had—we had obtained a consultation with an orthopedic, in Greenville, we had sent him to check on the—we had sent him the x-rays to check and make an opinion, to get an opinion on it and it was his opinion that this would not—that it would be better to go ahead and do this open reduction in it and not do the closed reduction, that it probably wouldn't hold and would not be satisfactory, therefore, that it would be better to do an open reduction to be more certain of the end result." (T. 46).

The "we" implies a plurality of persons, and the opinion of the orthopedic surgeon in Greenville was, of course, inadmissible, but some duty devolved upon the defendant physician to produce these witnesses unaccounted for. See *Code* § 38-119. Obviously, the defendant physician relied upon the opinion of someone else as to the treatment he gave plaintiff, without ever producing such authoritative source to bolster his own testimony at the hearing, and thus leaving it entirely hearsay, and without probative value. In this connection the defendant physician further testified: "Q. What was the reason that this closed reduction would not hold? A. Simply that this particular type of a fracture, he did not feel that it

38

would hold, it was straight into the bone at that particular location. . . He and I conferred and *we felt* that after considering the situation that this would probably not hold. " (Emphasis supplied.) (T. 47).

The defendant physician was asked if he decided why the bone was not knitting or healing as it should and he replied: "A. Not that—not that I could see at that time, no. Q. Well, did you find out later that there was a reason for this? A. No, sir, not particularly. Q. Then you still don't know, why, do you? A. No, sir,—not—no, sir, I can't say that there is some actual reason for it." (T. 55).

Again the defendant physician was asked as to the effect of the erosion around the screw and he replied: "A. The plate—as far as I remember now, as the result of that the plate would loose from the break, it will lose hold on the bone and the bone begins to—actually I don't remember without the x-ray here, but I mean—it was the effect is that the bone was not healed and there was a nonunion, there is a nonhealing effect, the bone just isn't healing." (T. 58).

The defendant physician was asked if the patient requested that his wrist be straightened at a later time, and he testified: "A. I don't remember—no—whether I don't remember specifically asking that question, however, we did probably discuss it but I don't remember asking that specific question of him, no, sir. Q. And—A.— However, it was felt—*it was our opinion that it was best to go ahead and do this* afterwards." (Emphasis supplied.) (T. 67-68).

The defendant physician was interrogated as to the other physicians with whom he consulted, as follows: "Q. In your testimony you stated, several times you have mentioned 'we,' would you state who the 'we' is that you are referring to in your descriptions? A. Well, that would be our radiologist. Q. And who is that? A. Dr. Singer and myself and possibly with Dr. Knowlton. Q. And who is Dr. Knowlton? A. He is another surgeon in our group. Q. All right—A.—and together with the orthopedic consultant. Q. And who was that? A. That was Dr. Myer and Dr. Stilling. Q. And they are in Greenville? A. Yes, sir." (T. 72).

The foregoing illustrates some of the unsatisfactory testimony delivered by the defendant physician, showing clearly that he was

testifying as to hearsay, and depending on what other physicians told him, without producing them in the case so they could give original, and admissible, evidence.

For all the reasons stated above I dissent and would vote to reverse the judgment.