## 51377. DICKERSON v. HULSEY.

Stolz, Judge.

The plaintiff's malpractice suit alleges that she was admitted to a hospital with an injury to the lumbosacral area; that her attending physician, defendant Dr. Hulsey, performed a Dilation and Curettage (D & C) operation on her pursuant to a special consent, which was void because it was signed by her while she was heavily sedated and not in complete control of her faculties; that, due to the negligence of the defendant in failing to exercise the reasonable degree of care and skill required by members of the medical profession in performing the operation, the defendant perforated the plaintiff's uterine (uterus?), necessitating subsequent corrective surgery by a Dr. Weems. The complaint sought general and special damages.

The defendant filed an answer, alleging the plaintiff's consent to the operation and denying his negligence therein, and moved for summary judgment.

It appeared from the deposition of the plaintiff and Dr. Weems that the plaintiff had had at least two D & C operations that she could remember prior to the one performed by the defendant, one by Dr. Weems and another by a Dr. Manning. These were necessitated by abnormal uterine bleeding due to endometritis (an infection or inflammation of the uterus lining). The defendant deposed that, among other symptoms, the plaintiff was suffering from heavy, frequent bleeding

when she consulted him; and that, in the course of the operation, he noticed a loss of tension on the curette (instrument used to scrape the inside lining of the uterus), removed it and immediately called in Dr. Weems for consultation. Dr. Weems deposed that he then performed a laparotomy (exploratory operation), revealing a perforation of the uterus, which was repaired by suturing; that the perforation stops bleeding when it is repaired; that the plaintiff's further incidents of abnormal bleeding after her discharge from the hospital would have been the result of a continuation of the endometritis and not the perforation; that the defendant exercised the degree of care and skill employed by the medical profession generally in his treatment of the patient and performance of the operation; and that it is not uncommon for the uterus to become perforated during a D & C, in even the best of skillful hands and techniques.

The plaintiff appeals from the grant of the defendant's motion for summary judgment. *Held:*

The defendant movant for summary judgment, by his own medical testimony and that of Dr. Weems, positively showed facts from which the only inference reasonably to be drawn supports the initial presumption that a proper degree of care and skill was used, thus meeting the requirement that on medical questions the proper standard of measurement must be established by the testimony of medical experts. The plaintiff having failed to support her contention of negligence with any evidence, opinion or otherwise, it was not error to grant the defendant's motion for summary judgment. See *Anderson v. Crippen,* 122 Ga. App. 27 (176 SE2d 196) and cits. Cf., *Heath v. Steverson,* 123 Ga. App. 740 (182 SE2d 323); *McGlamry v. Smallwood,* 124 Ga. App. 401 (184 SE2d 52); *Rushing v. Ellis,* 124 Ga. App. 621 (184 SE2d 667); *Hogan v. Almand,* 131 Ga. App. 225 (205 SE2d 440).

*Judgment affirmed. Bell, C. J., Clark and Marshall, JJ., concur. Deen, P. J., concurs specially. Evans and Webb, JJ., dissent. Pannell, P. J., and Quillian, J., concur in the result of the dissent.*

ARGUED OCTOBER 29, 1975 — DECIDED FEBRUARY 19, 1976 — REHEARING DENIED MARCH 12, 1976 — ▉

*Harmon & Wells, James H. Harmon, Carl A. Veline, Jr.,* for appellant.

*Jones, Cork, Miller & Benton, E. Bruce Benton,* for appellee.

DEEN, Presiding Judge, concurring specially.

We deal here with the question of the necessity for the plaintiff in a medical malpractice suit to come forward with expert medical evidence in opposition to the doctor's motion for summary judgment.

In a medical malpractice action, the presumption is that the medical or surgical services were performed in an ordinarily skillful manner, and the burden is on the one receiving the services to show a want of due care, skill and diligence. *Ga. Northern R. Co. v. Ingram,* 114 Ga. 639, 640 (40 SE 708); *Akridge v. Noble,* 114 Ga. 949, 958 (41 SE 78); *Fincher v. Davis,* 27 Ga. App. 494 (2) (108 SE 905). The proof ordinarily required to overcome such presumption of care, skill and diligence is that given by physicians or surgeons as expert witnesses. *Pilgrim v. Landham,* 63 Ga. App. 451 (4) (11 SE2d 420); *Howell v. Jackson,* 65 Ga. App. 422 (16 SE2d 45). "It is the general rule in this jurisdiction that laymen, even jurors and courts, are not permitted to say what is proper medical and surgical treatment, for that is a medical question. But where *the result of medical treatment is so pronounced as to become apparent,* as where a leg or limb which has been broken is shorter than the other after such treatment, or where a doctor undertakes to stitch a wound on his patient's cheek, and, by an awkward move, thrusts his needle into the patient's eye, this fact may be testified to by anyone competent to testify; and cases of such character are the *only* exception in this jurisdiction to the general rule requiring expert medical testimony to show negligence respecting a physician's or surgeon's service to his patient." *Shea v. Phillips,* 213 Ga. 269, 271 (98 SE2d 552). (Emphasis supplied.)

I am not prepared to say that the perforation of the uterine wall of a plaintiff with a history of endometritis (infection or inflammation of the uterus lining) and

undergoing a D & C operation is a result "so pronounced" as to demonstrate medical malpractice without expert medical evidence.

There being no inference of negligence from the result of the medical treatment undergone by the plaintiff and the defendant having offered evidence showing his actions were proper, it was not error to grant the defendant's motion for summary judgment. *Anderson v. Crippen,* 122 Ga. App. 27 (176 SE2d 196) and cits.

EVANS, Judge, dissenting.

Plaintiff sued defendant (a physician) for negligence in his professional conduct and in the performance of a serious operation upon her. The lower court sustained defendant's motion for summary judgment, and a majority of this court affirms. I respectfully dissent.

1. First, let it be remembered that plaintiff alleged in her complaint what the physician did, punctured her uterus and perforated her womb [T.3], and if her complaint is true there can be no question as to defendant physician's being negligent. She did not even know the operation was to be performed, but first learned of it afterwards, upon regaining consciousness, and sufficient use of her senses to make inquiry of the physician as to what he had done to her.

2. Plaintiff had no duty whatever of introducing any evidence to sustain the allegations of her complaint as against a motion for summary judgment until defendant first introduced evidence sufficient to "pierce the pleadings." This the defendant failed to do. He introduced his own testimony and that of a fellow physician, but the *opinion evidence* of these two experts can never "pierce the pleadings" — and can never be sufficient evidence upon which to base a summary judgment. *General Motors Corp. v. Wilson,* 120 Ga. App. 156, 157 (169 SE2d 749); *Ginn v. Morgan,* 225 Ga. 192 (1, 3) (167 SE2d 393); *Harrison v. Tuggle,* 225 Ga. 211 (2) (167 SE2d 395).

3. This court has held many, many times that a jury and other fact-finding bodies are not bound by opinion evidence; that they may believe it or not; give credence to it or not; they may treat it as they will, and they may completely disregard such opinion evidence without

rhyme or reason. *Liberty Mut. Ins. Co. v. Williams,* 44 Ga. App. 452 (1) (161 SE 853); *Ocean Acc. &c. Corp. v. Lane,* 64 Ga. App. 149 (1) (12 SE2d 413); *Holmes v. Harden,* 96 Ga. App. 365, 371 (100 SE2d 101).

4. But let us go a step further and note the amazing status of this case at the time the trial court granted defendant's motion for summary judgment. Plaintiff testified (beginning at transcript p. 50) among other things as follows: (1) She did not remember signing a written consent for the performance of a dilation and curettage (D & C), but she went to the doctor for pain in her back and was not aware that a D & C was to be performed. (T. 62)

(2) Her husband told the doctor not to perform the D & C. (T. 76)

(3) Another doctor, (Raynor) when made known that what was done, said "it's crazy" (to have performed such an operation). (T. 97)

(4) Defendant Doctor Hulsey admitted that in performance of the D & C he did actually *puncture the uterus (perforated the womb)* and that although he had performed *more than one hundred operations known as D & C, this was the first and only time he had ever punctured the uterus and perforated the womb.* (T. 111, 122)

(5) The doctor produced a writing which he contended plaintiff signed and thereby consented to the operation. She testified her memory was void as to all matters covering this period and she could not remember signing it, nor could she deny signing, but as alleged in her complaint (T. 2), if she signed it, she did it while she was under heavy sedation.

No person in his right mind would have signed the paper relied on by the doctor. It was the most far-reaching, ridiculous and completely ludicrous paper that could be imagined.

(6) The paper states: "I consent to the performance of operations and procedures *in addition to or different from those now planned, whether or not arising from presently unknown conditions* which the above-named doctor or his assistants may consider *necessary or advisable* in the course of the operation." (Emphasis supplied.) It also authorized the disposal of "limbs which

may be removed." (T. 127)

Under this monstrosity, if she signed it and was rational and understood it, the physician could have severed the patient's head from her body and disposed of the head with no liability against him if he "considered same necessary," even though in fact it might be proven that this was not necessary. Did the doctor *consider* it necessary? That was the only limitation in the alleged written consent. Of course such a paper is void on its face.

5. Here we are not talking about *pleadings* (which defendant failed to pierce), but we are talking about *sworn testimony.* A reading of her depositions should be all that is required to show there were vital issues of fact for the jury to pass upon in this case. And when it comes to the weight to be given such testimony, let it be remembered that the Georgia Appellate courts have held time without number that a patient knows more about his own injuries and the cause thereof than "a whole college of physicians." See *City of Atlanta v. Champe,* 66 Ga. 659, 663; *Southern R. Co. v. Tankersley,* 3 Ga. App. 548 (1) (60 SE 297).

6. Again, the plaintiff filed her response to defendant's interrogatories (T. 128-132), and here we have contradictions of defendant's contentions which call for a jury to settle the issues.

7. Surely the majority opinion did not expect that plaintiff was required (nor would she have been allowed) to testify that defendant physician was *negligent.* She would not have been allowed to use that word because that would have been a conclusion and would have been the ultimate fact the jurors were impaneled and sworn to decide. It would have invaded the province of the jury. See *Shaw v. Jones, Newton & Co.,* 133 Ga. 446 (2) (66 SE 240); *Whatley v. Henry,* 65 Ga. App. 668 (7) (16 SE2d 214). She simply testified to (and alleged in her complaint) facts that require the conclusion that defendant was negligent respecting the operation and the circumstances under which it was performed.

8. I dissent and would reverse the trial court in its grant of summary judgment in favor of defendant.

I am authorized to state that Judge Webb concurs in this dissent; and Presiding Judge Pannell and Judge

Quillian concur in the result of the dissent.