63285. GUYER v. MAYOR & ALDERMEN OF THE CITY OF SAVANNAH et al.

McMURRAY, Presiding Judge.

This case involves a collision of motor vehicles in the City of Savannah between an automobile driven by the plaintiff and a city vehicle driven by an agent, servant or employee of the city acting within the scope of his employment.

Suit has been filed by the plaintiff against the mayor and aldermen of the City of Savannah and Phillip Alonzo Bowman, Jr. (the agent, servant or employee), alleging negligent operation of the vehicle resulting in injuries, pain and suffering, both mental and physical, and permanent disability.

The defendants answered, inter alia, denying the claim but admitting jurisdiction and the location of the street intersection where the alleged collision occurred. However, in answer to requests for admissions the defendants admitted defendant Bowman was an agent, servant or employee of the city who was acting within the scope of his employment at the time of the automobile collision and defendant Bowman was not performing his duties in an emergency situation but denied that he was negligent or that the plaintiff's injuries were due to said collision.

After discovery the defendants moved for summary judgment contending there was no genuine issue as to any material fact and they are entitled to judgment as a matter of law based upon the entire record and because the plaintiff is "precluded from pleading or recovering in an action for damages against the Defendants those

damages for which compensation is available for economic loss" in failing to meet the threshold requirements of the Georgia Motor Vehicle Accident Reparations Act, Code Ann. § 56-3403b (b) (Ga. L. 1974, pp. 113, 116; 1975, pp. 1202, 1204). The plaintiff responded to the motion by filing an affidavit with reference to her injuries and damages caused by the agent, servant and employee of the city in which she contends is a serious injury to her left elbow and arm containing a hematoma, said injury having continued now for approximately four years and will continue for the rest of her life, remaining swollen on numerous occasions and has continued to swell the same being a foreign "knot" caused by the trauma created by the agent, servant and employee of the city causing severe pain and suffering in rainy weather. She also swore therein that the gripping ability of her left hand has been diminished due to the trauma and that the injuries are in the nature of permanent injuries in that she was not ailing prior to the trauma which has only resulted since the collision involving the agent, servant and employee of the city and "due to the longevity of these injuries your Plaintiff verily believes that these injuries are permanent and causing a permanent disability to her body as a whole." The motion was thereafter heard and granted and plaintiff appeals. *Held:*

1. The sole enumeration of error is that the trial court erred in granting the motion for summary judgment inasmuch as the plaintiff has incurred a serious injury and is entitled to noneconomic loss under Code Ann. § 56-3403b, supra. Plaintiff contends that evidence shows from her testimony that she has been permanently injured from the date of the collision to the date of her affidavit and that she will continue to suffer these injuries in the future and she has been permanently disabled as to the gripping ability of her left hand. Further, she has been permanently disfigured as to the "knot" (hematoma) located in her left elbow and her arm swells on numerous occasions. In her deposition she deposed that she had a broken elbow and that she also had a problem with her knees which were badly bruised, she cannot now kneel down, and her left arm is no longer normal, and it hurts and is swollen, that is, at the time of the deposition (April 14, 1981, the collision occurring February 24, 1977).

The defendants contend, however, that the deposition of the attending physician negates the issue of serious injury by showing conclusively the absence of any fracture or break, the physician characterizing her condition as "tennis elbow," "lateral condylitis . . . tendonitis." With reference to whether the doctor was of the opinion that it was caused by the collision or merely overwork or overuse of the muscles causing "tennis elbow," his exact testimony was: "I wouldn't think it would be related, you know, from the historical

onset. I think it was just something that came up. Now, you know, if it had happened, she'd have had the same type pain or, you know, gotten a little better since the time of the accident back in, you know, March. I'd say it has to be casually related." In answer to the question as to whether any of her injuries she suffered were disabling his answer was, "Not from the examinations of the times that I saw her, no. I had no further follow-up on her after June." He further testified that she did have some swelling four months after the trauma, and in answer to a question as to whether it was related to the collision he replied, "I'd say yes, it would be related." As to whether the swelling in her hands would almost obviously be related his answer was: "Oh, yes." However, he testified that he didn't think she would still be suffering from swelling today (the date of the deposition being April 30, 1981, the collision occurring February 24, 1977).

Although the medical expert had not seen her since June of 1977, approximately four months after the trauma, and that even though the patient might state she would have swelling and it still bothered her periodically and none of that happened before the collision he testified that "from a medical standpoint, from what I understand of physiology and, you know, the healing of things, no, I would say that would be very unusual for a traumatic episode of this magnitude. Now yes, there are some severe injuries that you will have what we call chronic edema and chronic swelling," and that if she was still suffering from the effects of the collision even as of today, "I would just say that she certainly hadn't followed the normal healing course. I'd be very surprised if she was significantly bothered at this late date, after examination in 1977." The medical expert further testified that he didn't think she would have swelling or a permanent injury four years after the collision, yet his substantive findings are based on his examination of the plaintiff within four months after the incident. Nevertheless, his testimony is that if the patient is having swelling "it may be casually related" and "a possibility, anything is possible, yes." He further testified that the healing of each individual human being is different and that if she is still suffering from the effects "she certainly hadn't followed the normal healing course," but he would be very surprised if she was significantly bothered at this late date after examination in 1977.

Under Code Ann. § 56-3402b (j) (Ga. L. 1974, pp. 113, 114; 1975, pp. 1202, 1203) "serious injury" is classified, among other things, as "a fractured bone, permanent disfigurement . . . an injury resulting in disability for not less than 10 consecutive days." The plaintiff has testified here that her elbow was broken, albeit the medical doctor testified that the X-rays failed to disclose a break. Further, she testified she had a hematoma or knot on her elbow and still has same

which swells, and the medical doctor agrees that she had a hematoma ("tennis elbow") on her left elbow but in his opinion it should have cleared up by now, but, if not, "she certainly hadn't followed the normal healing course." It is noted that the medical expert's testimony is based upon his examination of the plaintiff within four months after the collision and he has not examined her since. The case is therefore controlled adversely to the defendants by *Griffin v. Wittfeld,* 143 Ga. App. 485, 486 (2) (238 SE2d 589), in that the burden was on the defendants to affirmatively negate plaintiff's claim and show she was not entitled to recover under any theory of the case, citing *First of Ga. Ins. Co. v. Josey,* 129 Ga. App. 14, 15 (3) (198 SE2d 381). The medical testimony was over four years old and even that testimony does not refute that the plaintiff may still have injury, "a possibility," "anything is possible," and it "may be casually related." As was stated in *Griffin v. Wittfeld,* supra, at page 486-487, until the movant for summary judgment has made a prima facie showing by evidence which "demands a finding in his favor as to the particular matter, there is no duty upon the opposing party to produce rebuttal evidence," citing *Henderson v. Atlanta Transit System,* 133 Ga. App. 354, 356 (1) (210 SE2d 845). Further, the movant has not refuted the plaintiff's testimony that her elbow is disfigured with a "knot," that she has lost some use of her grip in her left hand and has pain and suffering which may be arthritis, and she believes it to be the result of the injury received in the collision. It is true a layman may not give a medical opinion. See *Thomason v. Willingham,* 118 Ga. App. 821 (2), 825 (165 SE2d 865); *Hamby v. Hamby,* 103 Ga. App. 826, 833 (121 SE2d 169); *Cone v. Davis,* 66 Ga. App. 229, 236 (6) (17 SE2d 849). But a person knows more about his injuries and suffering than a whole college of physicians and may testify as to same. *Southern R. Co. v. Tankersley,* 3 Ga. App. 548 (1), 549 (60 SE 297); *Southern R. Co. v. Petway,* 7 Ga. App. 659 (1) (67 SE 886); *City of Atlanta v. Champe,* 66 Ga. 659, 663; *Great Atlantic &c. Tea Co. v. Dupee,* 71 Ga. App. 148 (30 SE2d 365); *Stephen W. Brown Radiology Assoc. v. Gowers,* 157 Ga. App. 770, 787 (17) (278 SE2d 653). This is true as to pain and suffering but not as to permanency of injury. *Atlanta Street R. Co. v. Walker,* 93 Ga. 462 (2), 465 (21 SE 48). Nevertheless, a non-expert such as the plaintiff familiar with her physical condition may testify as to observations of the effect on her work just as any other witness. See *American Fidelity & Cas. Co. v. Farmer,* 77 Ga. App. 166, 168 (17), 185-186 (48 SE2d 122). Under the circumstances here where the medical testimony is about the patient over four years ago, and the plaintiff's testimony is current, with reference to her "knot," a hematoma, which was slowly resolving according to the medical expert and that he saw no permanent effects; nevertheless her

testimony is that she still has swelling, disfigurement, and some loss of use of the grip in her left hand. Her testimony has not been overcome by the medical expert such as was the case in *Anderson v. Crippen,* 122 Ga. App. 27 (176 SE2d 196) and *Dickerson v. Hulsey,* 138 Ga. App. 108 (225 SE2d 464). The trial court erred in granting the motion for summary judgment.

*Judgment reversed. Banke and Birdsong, JJ., concur.*

Decided June 17, 1982.

*George M. Hubbard,* for appellant.
*William W. Shearouse,* for appellees.