30453. GREAT ATLANTIC & PACIFIC TEA CO. *v.* DUPEE.

*Titus & Altman,* for plaintiff in error.

*A. J. Whitehurst,* contra.

PARKER, J. Mrs. Nancy P. Dupee sued the Great Atlantic & Pacific Tea Company for damages for injuries alleged to have been sustained from having eaten certain meat unfit for human consumption purchased by her from the defendant. Her suit was dismissed when the court sustained a general demurrer filed by the defendant, and that ruling was reversed by this court in *Dupee* v. *Great Atlantic & Pacific Tea Co.,* 69 *Ga. App.* 144 (24 S. E. 2d, 858), in which a statement of the allegations of the plaintiff appears. Thereafter, the case was tried, and the jury found in favor of the plaintiff, and returned a verdict against the defendant for $250. The defendant made a motion for new trial on the general grounds only, which was overruled, and the defendant excepted.

The evidence tended to show the following: The plaintiff purchased from the defendant some souse meat or hogshead cheese. She inquired as to its freshness and was informed that it was fresh and all right. It looked perfectly good and tasted all right. After eating a little of the meat the plaintiff became very sick. She had for her supper along with the meat some biscuits, butter, and milk. Her father, her husband, and her daughter ate some of the meat; and all of them became sick. Two of them drank buttermilk, or clabber, and two drank sweet milk. There was nothing wrong with the biscuits or the milk. Before they ate supper they were all as well as usual, and all seemed to have been taken sick about the same time, near midnight, after having eaten supper around 6 or 6:30 o'clock in the evening; and they were sick alike in that they were all vomiting. Mr. Irwin, who operated the meat-market for the defendant, and who sold the meat to the plaintiff, went to see her sometime afterwards and admitted to her that the meat had not been inspected as required by an ordinance of the City of Thomasville, in which municipality the sale took place. Other circumstances and details respecting the character and extent of the sickness of the plaintiff, not material to a decision of the issue here involved, appeared from the testimony in behalf of the plaintiff.

The evidence for the defendant tended to show that the meat sold to Mrs. Dupee was purchased by the defendant for resale in the market operated by it, from a farmer-customer of the defendant's store not identified by name or otherwise, probably on the same day it was sold to the plaintiff. The meat was tested by Mr. Irwin, who ate some of it when he bought it for the market, and it seemed to him to be very nice. He sold several orders of it to other people, approximately four or five, and had no complaint from them that it was not all right. Others working in the store ate some of the meat, and it did not make any of them sick. When the city inspector heard of the sickness of the plaintiff and members of her family, he took the rest of the meat from the defendant's market and sent it to the State chemist in Atlanta for analysis. The chemist fed some of the meat to mice to see if it contained any chemical poison. The mice lived and he concluded that it contained no chemical, or appreciable chemical poison, if any. Aside from the tests on the mice he did not undertake to get any chemical analysis or reaction for poison. Mr. Irwin regarded the meat as cooked meat, and did not feel that an inspection was necessary; that fresh meats only had to be inspected.

■ On the first appearance of this case in this court, it was held that "a finding would be authorized that if the defendant had complied with this ordinance [referring to the ordinance involved and set out in the decision] and had the meat inspected before selling it, its unwholesome and contaminated condition would have been discovered." *Dupee* v. *Great Atlantic & Pacific Tea Co.,* supra. Under that ruling it was negligence per se on the part of the defendant to sell the meat or meat-food product without complying with the ordinance requiring inspection. The negligence of the defendant therefore appears as a matter of law in the unlawful sale to the plaintiff of meat products found by the jury to be unwholesome and unfit for human consumption.

■ The big question in this case is whether the evidence as to the alleged unwholesome condition of the meat was sufficient to authorize the verdict in favor of the plaintiff. Proof by one claiming an injury from eating meat-food products sold to her by another merely that she ate the food and thereafter became sick would not, without more, establish the allegation that the food was

unfit for human consumption; yet where, as in this case, the testimony of several witnesses tended to show that the plaintiff and three other members of her household, all apparently in good health, ate small quantities of the meat alleged to have been impure, and all of them thereafter, and within about the same period of time, became suddenly and violently ill, the only other food eaten with the meat being biscuits and either clabber or sweet milk, and the illness of the several persons being accompanied by the same general manifestations, such as pains in the stomach, nausea, and vomiting, such evidence, if its credibility satisfied the jury, was sufficient to make a prima facie case for the plaintiff against the seller of the meat. *McPherson* v. *Capuano*, 31 *Ga. App.* 82 (2) (121 S. E. 580). Where an event is unusual and extraordinary in its nature, and the peculiar character of the incident is sufficient within itself to indicate that it must have been brought about by the negligence of someone, and where the most reasonable and probable inference which can be rationally drawn from the happening is that it would not and could not have taken place had not the person charged with negligence been guilty of the particular acts or omissions set forth by the plaintiff as constituting the actual cause, the jury may apply the rule of evidence known as the doctrine of *res ipsa loquitur* in determining whether or not the incident or event must have been thus occasioned, and if the jury should decide that it had been thus brought about, and that such causal acts or omissions on the part of the defendant constituted negligence, then the plaintiff would be entitled to recover. *Central Railway Co.* v. *Blackman*, 7 *Ga. App.* 766 (5) (68 S. E. 339); *Atlanta Coca-Cola Bottling Co.* v. *Danneman*, 25 *Ga. App.* 43 (102 S. E. 542). The contention of the plaintiff in error that the doctrine of *res ipsa loquitur* cannot apply unless the circumstances are sufficient to exclude every other reasonable hypothesis as to the cause of the injury alleged to have been sustained, save the alleged negligence of the defendant, is met under the rule stated. "Just as in civil cases facts are proved by a mere preponderance of evidence, so in the application of this doctrine, if in the opinion of the jury the most *reasonable* and most *probable* inference which can be drawn from the nature and character of such an extraordinary event is that it would not and could not have happened had not the defendant been guilty of the particular

conduct charged, then there has been an exclusion in their minds of every other reasonable hypothesis, not by evidence, but by virtue of the peculiar nature and character of the event speaking for itself." *Atlanta Coca-Cola Bottling Co.* v. *Danneman,* supra. "It is frequently difficult to determine when it can be safely said that the thing speaks for itself. However, the process by which it is to be determined whether the physical facts and circumstances accompanying an injury are such that the act may be said itself to speak the negligence of the defendant, *is to be worked out by the jury* and not by the court [Italics ours]. Not only is negligence or diligence, in every case where either is involved, a question solely for the jury, but it is also the perogative of the jury to say in the first instance whether the evidence adduced to raise the inference of fact,—that an extraordinary and unexplained casualty authorizes an inference that the defendant was negligent,—is sufficient or insufficient for the purpose." *Sinkovitz* v. *Peters Land Co.,* 5 *Ga. App.* 788, 793 (64 S. E. 93).

Negligence of the defendant in selling the meat without having it inspected as required by the city ordinance clearly appears, and the only extent to which the jury may have applied the *res ipsa loquitur* doctrine was on the question as to the cause of the illness of the plaintiff, that is, whether it was brought about by the eating of the meat or by some other cause. The plaintiff testified that, "he [Mr. Irwin] asked me did the souse meat make us sick. I told him it did," and on cross-examination she said, "that meat had to be poisonous," and "it made us all sick." The plaintiff's daughter testified in part as follows: "My health was all right before eating this souse meat. Never had any trouble with my stomach. My health was perfect up to that time. It gave me upset stomach, nausea, and vomiting, accompanied by pain in my stomach,—intense pain for about three hours." She also testified: "The condition of my family was good before eating this souse meat . . after eating it they all had upset stomach, nausea, and vomiting." The plaintiff's father testified that he ate some of the hogshead cheese, two little pieces, "thin as a wafer," and thereafter was "as sick as I ever was in my life, in every way."

We think the jury were authorized to conclude that these witnesses knew better than anyone else what caused their sickness, and that their testimony, together with the surrounding facts and

circumstances, made a prima facie case.. "Whether a person was injured, and the extent of his injury and consequent suffering, is entirely a question for the jury; and where he testified that he was injured and suffered, the jury can accept and credit his testimony based on his knowledge, in preference to the evidence of 'a whole college of physicians,' that he was not injured." *Southern Railway Co.* v. *Tankersley, 3 Ga. App.* 548 (60 S. E. 297) ; *Southern Railway Co.* v. *Pelway, 7 Ga. App.* 659 (67 S. E. 886). When the plaintiff made a prima facie case the burden was on the defendant to exonerate itself. It endeavored to do this by introducing evidence tending to show that the meat was tested by the manager of the defendant's market when it was bought for sale by the market, and that it appeared to be all right; that other employees of the defendant's store ate some of the meat without any ill effects therefrom, and that it was sold to other customers who made no complaints, and that a specimen of the meat was sent to the State chemist for examination and that he found no chemical, or appreciable chemical poison, if any, in the meat. The credibility of all the witnesses, both for the plaintiff and the defendant, being a matter exclusively for the jury, we cannot say the verdict as found by the jury was unauthorized or that it was without evidence to support it.

There being no error of law complained of, and the only question being the sufficiency of the evidence to sustain the verdict, the judgment refusing a new trial is affirmed.

*Judgment affirmed. Sutton, P. J., concurs. Felton, J., dissents.*