34691.   PAYTON *v.* LEE.

DECIDED JUNE 16, 1953.

*J. T. Sisk,* for plaintiff in error.

*H. B. Payne, Robert M. Heard,* contra.

CARLISLE, J. Of the assignments of error in the motion for a new trial, the only ones insisted upon by counsel for the plaintiff in his brief filed in this court are those contained in the two special grounds and the errors assigned in these grounds are essentially the same—namely, that the trial court erred in its refusal to submit to the jury the question of the existence of negligence per se arising from a violation of Code § 42-109 (7), which provides: "If it [an article deemed to be adulterated within the meaning of the food and drug laws] consists in whole

or in part of a filthy, decomposed, or putrid animal or vegetable substance, or any portion of an animal unfit 'for food, whether manufactured or not, or if it is the product of a diseased animal, or one that has died otherwise than by slaughter." Under the view which we take of the evidence in this case, when it is viewed in the light of the sole issue of whether a violation of Code § 42-109 (7) was established, the failure of the trial court to charge on the issue of negligence per se does not constitute reversible error, as the verdict for the defendant was demanded.

According to the plaintiff's testimony, she ate some potato salad in the defendant's place of business at about 6:30 p. m. on June 23, 1951. At about 9 p. m. of the same evening, she became nauseated and her physician directed that she be hospitalized. She suffered severe pain and cramping in her abdominal region and vomited violently until the following Tuesday, during all of which time she suffered violent headaches, and her physician diagnosed her affliction as food poisoning, and she was certain that the potato salad had been the cause of her illness. At about 10 a. m. of the day on which she ate the potato salad, she had eaten a piece of toast and had drunk a cup of coffee and she had consumed no other food that day prior to eating the potato salad. She could not remember what she had eaten on the previous day.

The plaintiff's husband corroborated the fact of her illness and stated that in May of that year she had been in the hospital for seven days with pneumonia.

The plaintiff's aunt testified that her daughter was made ill on the same day as the plaintiff by eating the defendant's potato salad; that potato salad spoils very quickly and is dangerous to serve after it is kept for any length of time and especially if it is not kept under constant refrigeration; that she went to see the defendant, and he told her that the potato salad served in his place of business on Saturday had been prepared the night before at about 11 p. m.

The plaintiff's physician testified that he definitely diagnosed her ailment as food poisoning, but made no laboratory tests to determine what particular food had produced the poisoning; that potato salad is one of the most receptive agents for bacteria which produce food poisoning; that such bacteria can come from

the containers in which the food is mixed and stored, from the hands of the person handling the food, from the air, or from the plates and implements used in eating the food. The physician also testified that, during the summer of 1951, there were illnesses of epidemic proportions in Elberton caused by a virus, and the symptomology of those illnesses and that of food poisoning are very similar; that the State Health Department was called in to ascertain the cause of the virus epidemic but was unable to do so, but he was certain that the plaintiff's illness was not caused by the virus but by food poisoning. He testified further that in his experience, where large groups of people partook of the same food at the same time and the food was poisoned by the presence of bacteria, sixty to sixty-five percent would be afflicted with food poisoning.

The evidence for the defendant was to the effect that an experienced person was in charge of the preparation of the potato salad, and the very best ingredients on the market were purchased for making the potato salad. All the ingredients for making the salad were inspected. The containers in which it was prepared and stored were all washed, scalded, and disinfected. All of the potato salad which was consumed on June 23 was made at about 8 a. m. of that day, placed in glass jars with the caps screwed in place and covered with cracked ice. The icebox was never allowed to run out of ice during that day. At least 12 other persons partook of the potato salad on June 23 and no one except the plaintiff and her cousin became ill.

This evidence establishes without contradiction that the defendant was not negligent in the preparation of the potato salad, and that the salad was not unfit for human consumption, unless it can be said that the fact of the salad being unfit for human consumption can be established by the circumstantial evidence that the plaintiff ate it and became ill; and even under the circumstantial-evidence theory, the evidence does not meet the test as it does not exclude every other reasonable hypothesis as to the cause of the plaintiff's illness save that the potato salad was unfit for human consumption. It is just as reasonable that she was suffering from the virus disease prevalent in the community —and this is so, under the facts of this case, despite her physician's surmise to the contrary—or that her illness was caused

from some unknown source, as that the potato salad had caused it and therefore such salad was unfit for human consumption. *Federal Reserve Bank of Atlanta* v. *Haynie,* 46 *Ga. App.* 522 (1) (168 S. E. 112); *Great Atlantic & Pac. Tea Co.* v. *Dupee,* 71 *Ga. App.* 148, 150 (2) (30 S. E. 2d 365). Nor can the defendant's negligence in any respect be established, or the fact of the unfitness of the potato salad for human consumption be established under the doctrine of res ipsa loquitur by the evidence in this case. *Miller* v. *Gerber Products Co.,* 207 *Ga.* 385 (62 S. E. 2d 174).

*Judgment affirmed. Gardner, P. J., and Townsend, J., concur.*