A93A1670. STEVENSON v. WINN-DIXIE ATLANTA, INC.
(440 SE2d 465)

BEASLEY, Presiding Judge.

Alleging that she and her four minor children became violently ill as a result of eating unwholesome ice cream sold by Winn-Dixie, Stevenson filed this complaint alleging both a tort and a violation of the Fair Business Practices Act, OCGA § 10-1-390 et seq. After discovery, the parties filed cross-motions for summary judgment. Stevenson appeals from the denial of her motion and the grant of Winn-Dixie's motion.

Viewed in the light most favorable to Stevenson, the evidence would authorize the following as facts: Stevenson and her four children, ages thirteen, fifteen, nine and two had been visiting relatives in

Mississippi. They ate a spaghetti dinner and returned on December 1, 1991, to Atlanta, consuming soft drinks during the trip. Upon arrival at approximately 7:00 p.m., Stevenson purchased a half gallon of Winn-Dixie's Superbrand vanilla ice cream. Within the hour, the entire half gallon was eaten by Stevenson and the children. The ice cream tasted "funny" or "tangy" but was not malodorous.

The next day, Stevenson and the children began to experience symptoms of intestinal distress, including fever, nausea, vomiting, and diarrhea. This continued over several days, during which time they consumed only fruit juice. Plaintiff received no report that anyone from her family in Mississippi reported ill effects from the food consumed there.

The physician who treated them four days after consumption diagnosed gastroenteritis. He attributed it to food poisoning because the plaintiff had told him they had eaten spoiled ice cream with an expiration date of May 1989 or 1990 and nothing else over a certain period of time. The physician's record and his memory did not indicate that he knew when they had eaten it. He did not determine the cause of the illness but rather treated the symptoms, which were "mild." He discounted salmonella. He could reach no opinion regarding cause, other than what the patient told him; etiology was "unknown." It could have been a cause other than ice cream even if it was spoiled. The physician indicated it is possible that the cause of illness was a virus. No tests were conducted by him on the patients, to ascertain cause, and of course no tests could be conducted on the ice cream by plaintiff, to ascertain condition, because it was gone.

There is evidence, unrefuted by any competent evidence, that the ice cream was placed in the carton by the manufacturer on November 13, 1991, less than three weeks before its purchase, and that it had an expiration date of March 13, 1992, the custom and practice of the manufacturer being a four-month-for-sale shelf life. The carton design itself was not used by the manufacturer before March 27, 1991. This evidence is based on the identification number appearing on the side of the carton and is not refuted by the illegibility of the expiration date stamp, inasmuch as the carton was pulled from plaintiff's garbage four-and-one-half days after the ice cream was bought and consumed and three-and-one-half days after the empty carton was placed in the garbage. (This positive evidence renders irrelevant the evidence of *other* products being offered for sale after their expiration dates.)

The batch of ice cream from which plaintiff's came was laboratory-tested for bacteria count, among other things, before being sold. It met the standards prescribed by the Federal Department of Agriculture, the State of South Carolina (where it was manufactured), and the State of Georgia (where it was sold). The manufacturer received

no complaints about that batch of ice cream except that of plaintiff.

1. OCGA § 51-1-23 provides: "Any person who knowingly or negligently sells unwholesome provisions of any kind to another person, the defect being unknown to the purchaser, by the use of which damage results to the purchaser or to his family, shall be liable in damages for such injury." To establish a claim, there must be evidence that the food was unwholesome. A mere showing that a person became sick subsequent to eating food is insufficient. *Castleberry's Food Co. v. Smith*, 205 Ga. App. 859 (424 SE2d 33) (1992); *Wilson v. Mars, Inc.*, 121 Ga. App. 790, 791 (2) (175 SE2d 924) (1970).

Plaintiff's theories are that the ice cream was stale, i.e., beyond its expiration date, which theory is excluded by the evidence, or tainted, of which there is only contrary evidence (batch test) other than the fact of sickness beginning the morning after the evening consumption. See *Frazier v. Ga. R. &c. Co.*, 108 Ga. 807 (1) (33 SE 996) (1899). Plaintiff's third and last suggestion is that the ice cream became contaminated after it left the plant in that it melted and then was refrozen and sold. There is no evidence whatsoever that the ice cream's appearance, consistency, volume, or color was other than normal or that the carton was misshapen, indicated a leak, or bore any physical indicators that its contents had melted and remained in a melted condition before refreezing so as to become contaminated in the process. This theory is pure speculation.

The evidentiary rule denominated res ipsa loquitur does not apply. The nature of the incident itself is not sufficient to indicate that it was brought about by the negligence of Winn-Dixie, the manufacturer and seller of the product. See *Great Atlantic &c. Tea Co. v. Dupee*, 71 Ga. App. 148, 151 (1) (30 SE2d 365) (1944). Given the evidence presented, the illness is not a condition which would not have materialized and could not have materialized but for defendant's negligence in manufacturing or presenting the ice cream for sale. Id. See *U. S. Fidelity &c. Co. v. J. I. Case Co.*, 209 Ga. App. 61, 64 (3) (432 SE2d 654) (1993).

Plaintiff's evidence is circumstantial, and she has not excluded every other reasonable hypothesis as to cause save unfitness of the ice cream for human consumption. *Payton v. Lee*, 88 Ga. App. 422, 425 (77 SE2d 77) (1953); *Castleberry's Food Co. v. Smith*, supra at 861 (2). The amount consumed, the speed at which it was consumed, a virus, or some other unknown source, is just as reasonable a hypothesis. Illness alone cannot establish proximate cause. *Castleberry's Food Co.*, supra; *Wilson*, supra. Circumstantial evidence is not probative against positive and uncontradicted evidence to the contrary. *Frazier Assoc. &c. v. Dabbs & Stewart*, 173 Ga. App. 304 (325 SE2d 914) (1985).

Consequently, the record establishes that plaintiff cannot prevail

in her cause of action based on OCGA § 51-1-23.

2. This same evidence is sufficient to overcome the private claim pursuant to OCGA § 10-1-399 (a) for a violation of the Fair Business Practices Act. This claim was predicated solely upon the allegation that Stevenson had been injured because of the unfair and deceptive practice of selling foodstuffs after the expiration date. There being no competent evidence that she did in fact purchase consumer goods after the expiration date, it cannot be said that Stevenson has been harmed as a result of deceptive acts or practices in the consumer market. *Zeeman v. Black*, 156 Ga. App. 82, 86 (273 SE2d 910) (1980). Compare OCGA § 10-1-393 (b) (11).

The trial court correctly granted summary judgment to Winn-Dixie as to both the claim under the Fair Business Practices Act and the tort claim. Likewise, it correctly denied plaintiff's motion.

*Judgment affirmed. Pope, C. J., McMurray, P. J., Birdsong, P. J., Andrews, Johnson and Smith, JJ., concur. Cooper and Blackburn, JJ., concur in part and dissent in part.*

COOPER, Judge, concurring in part and dissenting in part.

I dissent. The affirmance of summary judgment with respect to appellant's common-law tort action for food poisoning usurps the province of the jury. Venerable authority exists applying res ipsa loquitur *in the context of food poisoning.*

Viewed in the light most favorable to appellant, the evidence would authorize the following facts: Appellant and her family had been visiting relatives in Laurel, Mississippi. They ate a spaghetti dinner before the return trip to Atlanta. They consumed only soft drinks during the trip. Arriving in Atlanta at approximately 7:00 p.m., appellant purchased a half gallon of Winn Dixie's Superbrand vanilla ice cream, which was on sale. Within the hour, the entire half gallon had been consumed by appellant and her children in one sitting. There is evidence that the ice cream tasted "funny" or "tangy" but was not malodorous. The next day, appellant and her family began to experience all the customary symptoms of severe intestinal distress, including fever, nausea, vomiting, and diarrhea. This continued over several days, during which time the plaintiffs consumed only fruit juice. Mrs. Stevenson's doctor diagnosed each as suffering from gastroenteritis as a result of food poisoning. Neither appellant nor any of the children was otherwise suffering from a cold or flu. No one from appellant's family in Mississippi reported ill effects from the food consumed there.

OCGA § 51-1-23 provides: "Any person who knowingly or negligently sells unwholesome provisions of any kind to another person, the defect being unknown to the purchaser, by the use of which damage results to the purchaser or to his family, shall be liable in dam-

ages for such injury." In order to establish a claim under this Code section, there must be evidence that the food was unwholesome. In this regard, a mere showing that a person became sick subsequent to eating food is insufficient. *Castleberry's Food Co. v. Smith*, 205 Ga. App. 859 (424 SE2d 33) (1992); *Wilson v. Mars, Inc.*, 121 Ga. App. 790, 791 (2) (175 SE2d 924) (1970). Here, however, the plaintiff showed that she and her family were in good health, that they had eaten *nothing but* the food suspected to be unwholesome, and within a few hours of each other, all five became suddenly and violently ill. This is a prima facie case of unwholesomeness, authorizing the jury to apply the maxim res ipsa loquitur. *McPherson v. Capuano &c.*, 31 Ga. App. 82, 83 (3) (121 SE 580) (1923). "Where an event is unusual and extraordinary in its nature, and the peculiar character of the incident is sufficient within itself to indicate that it must have been brought about by the negligence of someone, and where the most reasonable and probable inference which can be rationally drawn from the happening is that it would not and could not have taken place had not the person charged with negligence been guilty of the particular acts or omissions set forth by the plaintiff as constituting the actual cause, the jury may apply the rule of evidence known as the doctrine of *res ipsa loquitur* in determining whether or not the incident or event must have been thus occasioned, and if the jury should decide that it had been thus brought about, and that such causal acts or omissions on the part of the defendant constituted negligence, then the plaintiff would be entitled to recover. [Cits.]" *Great Atlantic &c. Tea Co. v. Dupee*, 71 Ga. App. 148, 151 (1) (30 SE2d 365) (1944). See also *Burns v. Ralston Purina Co.*, 210 Ga. 82 (77 SE2d 739) (1953); *Copeland v. Curtis*, 36 Ga. App. 255 (1) (136 SE 324) (1926). This permissive evidentiary inference as to causation of an unexplained and unusual event is also described by the maxim "post hoc, ergo propter hoc." See *Armour &c. v. Gulley*, 61 Ga. App. 414, 419 (6 SE2d 165) (1939). Contrary to appellee's contention below, the absence of direct medical testimony identifying the ice cream as the toxin is not fatal to appellant's case. "[T]he jury [would be] authorized to conclude that [appellant and her family] knew better than anyone else what caused their sickness, and that their testimony, together with the surrounding facts and circumstances made a prima facie case. 'Whether a person was injured, and the extent of his injury and consequent suffering, is entirely a question for the jury; and where [as here] [s]he testified that [s]he was injured and suffered, the jury can accept and credit [her] testimony based on [her] knowledge, in preference to the evidence of "a whole college of physicians," that [s]he was not injured.' [Cits.]" *Great Atlantic &c. Tea Co. v. Dupee*, supra at 152-153. Compare *Payton v. Lee*, 88 Ga. App. 422 (77 SE2d 77) (1953) (doctrine of res ipsa loquitur inapplicable to authorize a verdict for

plaintiff where the uncontradicted medical testimony showed that a virus, *then epidemic in Elberton*, Georgia, caused the same symptoms as accompany food poisoning); *Castleberry's Food Co. v. Smith*, supra at 862 (2) (verdict for plaintiff unauthorized where the uncontradicted medical evidence showed that the type of food poisoning alleged to have occurred took two to six hours to manifest itself and the symptoms the plaintiff suffered within thirty minutes of eating supposedly tainted canned food were *consistent with a hypoglycemic condition related to the plaintiff's diabetes*). It is the prerogative of the jury " 'to say in the first instance whether the evidence adduced to raise the inference of fact, — that an extraordinary and unexplained casualty authorizes an inference that the defendant was negligent, — is sufficient or insufficient for the purpose.' [Cit.]" *Great Atlantic &c. Tea Co. v. Dupee*, supra at 152. The direct evidence that the vanilla ice cream was "tangy" and "funny" tasting, in conjunction with the surrounding circumstances which reasonably tend to negative the inference of some other cause for the sudden onset of violent illness, would authorize a verdict in favor of plaintiffs. The trial court erred in granting summary judgment as to that count of the complaint alleging a tort action under OCGA § 51-1-23. *McPherson v. Capuano &c.*, supra at 84 (4). While I fully concur that appellant has adduced no competent evidence of a violation of the Fair Business Practices Act, I respectfully dissent from the affirmance of summary judgment as to appellant's common-law tort action.

BLACKBURN, Judge, concurring in part and dissenting in part.

I concur fully with Judge Cooper's opinion concurring in part and dissenting in part. I write separately merely to address the majority opinion's application of *Great Atlantic &c. Tea Co. v. Dupee*, 71 Ga. App. 148 (30 SE2d 365) (1944), to support its position that res ipsa loquitur does not apply in the instant case. A careful reading of *Dupee* actually supports the application of that doctrine to this case. In *Dupee* we state that "[t]he contention of the plaintiff in error that the doctrine of *res ipsa loquitur* cannot apply unless the circumstances are sufficient to exclude every other reasonable hypothesis as to the cause of the injury alleged to have been sustained, save the alleged negligence of the defendant, is met under the rule stated. 'Just as in civil cases facts are proved by a mere preponderance of evidence, so in the application of this doctrine, if in the opinion of the jury the most *reasonable* and most *probable* inference which can be drawn from the nature and character of such an extraordinary event is that it would not and could not have happened had not the defendant been guilty of the particular conduct charged, then there has been an exclusion in their minds of every other reasonable hypothesis, not by evidence, but by virtue of the peculiar nature and character of the

event speaking for itself.' [Cit.]" *Dupee*, 71 Ga. App. 151-152.

DECIDED DECEMBER 3, 1993 —
RECONSIDERATION DENIED DECEMBER 20, 1993 — 

*S. Robert Hahn*, for appellant.
*Fain, Major & Wiley, Gene A. Major, John K. Miles, Jr.,* for appellee.