A98A0513. MEYER et al. v. SUPER DISCOUNT MARKETS, INC. et al.
(501 SE2d 2)

JOHNSON, Judge.

Elizabeth Meyer, Janet Frank, and Karen Frank sued Super Discount Markets, Inc. ("Cub Foods") and Greenwood Packing Plant ("Greenwood") for food poisoning allegedly associated with a ham sold by Cub Foods and processed and packaged by Greenwood. The record shows that on February 17, 1994, the appellants and several other friends gathered for a family dinner at the home of Dot Acree. The main course was a ham which Dot Acree purchased uncooked earlier that day from Cub Foods.

In preparing the ham, Acree removed the sealed plastic packaging, set the ham in a baking pan and placed it in the oven. The ham smelled and looked normal before and after baking. After the ham was cooked, the appellants each sampled a small piece from the top

of the ham. Each appellant stated that the ham had no unusual taste or odor.

Janet Frank then prepared to serve the ham by inserting a carving fork into the center of the ham. As she did, a thick, white milky substance began to flow from the fork holes. The substance was accompanied by a foul, offensive odor which Frank stated was worse than anything she had ever smelled. Frank sliced the ham open to determine the source of the white substance and discovered a fist-sized pocket inside the ham. The thick substance in the ham pocket looked like clabbered milk with tartar sauce in it. None of the appellants actually consumed any of the white substance. The ham was returned that evening to the store where it was purchased.

Later that evening, Elizabeth Meyer became ill, suffering from a high fever, nausea, vomiting and diarrhea. Her treating physician, Dr. Stanley Arnold, diagnosed her as suffering from food poisoning and a staph infection. Meyer returned to her treating physician approximately three times because her symptoms persisted. She suffered from sporadic diarrhea for four to five months after she consumed the ham.

Later that same evening, Karen Frank also developed nausea, vomiting, diarrhea, light-headedness and stomach pains. Her symptoms lasted for five or six days. She was diagnosed by her treating physician, Dr. Robert Lathan, as suffering from food poisoning. Frank returned to Dr. Lathan two weeks later because she was still unable to eat solid foods without suffering from nausea, vomiting and diarrhea.

Janet Frank also suffered from nausea, vomiting and diarrhea shortly after consuming the ham. She apparently did not seek medical assistance.

The appellees presented evidence that after the ham was returned to Cub Foods, it was sent for testing to Silliker Laboratories, which specializes in testing meat and other food products. The tests performed by Silliker Laboratories indicated that the ham could not have caused anyone to become ill with staph food poisoning.

The trial court granted summary judgment to Cub Foods and Greenwood. For the reasons set out below, we reverse.

Summary judgment is appropriate when the court, viewing all the evidence and drawing reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is

an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. [Cit.]" Id.

1. The appellants maintain that the trial court erred in granting summary judgment because material issues of fact remain as to whether the ham caused the appellants' alleged injuries. We agree.

It is well established that an individual claiming damages after consuming allegedly unwholesome food must show a causal link between the food she alleges to be unwholesome and her resulting alleged illness. *Stevenson v. Winn-Dixie Atlanta*, 211 Ga. App. 572, 574 (1) (440 SE2d 465) (1993). Illness alone cannot establish proximate cause; a mere showing that a person became sick subsequent to eating food is insufficient. See *Castleberry's Food Co. v. Smith*, 205 Ga. App. 859, 861-862 (2) (424 SE2d 33) (1992); *Wilson v. Mars, Inc.*, 121 Ga. App. 790, 791 (2) (175 SE2d 924) (1970). In the absence of direct evidence of the unwholesomeness or adulteration of the food, recovery could be supported by circumstantial evidence " 'if every other reasonable hypothesis as to the cause of the plaintiff's illness could be excluded.' " *Edwards v. Campbell Taggart Baking Cos.*, 219 Ga. App. 806, 807 (1) (466 SE2d 911) (1996). As a general rule, causation is a jury issue and should not be determined by a trial court as a matter of law except in plain and undisputed cases. *Flanagan v. Riverside Military Academy*, 218 Ga. App. 123, 124-125 (460 SE2d 824) (1995); *Castleberry's Food*, supra at 862 (2).

In the present case, the appellants produced medical testimony to support their allegations that the ham caused their illnesses. For example, Dr. Lathan stated that Karen Frank came into his office complaining of nausea, vomiting and diarrhea. She informed him that she had eaten an abscessed ham the previous week and that her cousin was also ill after eating the ham. After conducting a series of tests, Dr. Lathan diagnosed Frank as suffering from gastroenteritis caused by staph food poisoning. This diagnosis was based on Frank's subjective history, as well as Dr. Lathan's objective testing and his experience as a physician. While Dr. Lathan's diagnosis was not confirmed by any laboratory data from testing performed on either Frank or the ham, his laboratory tests ruled out certain other possible causes. According to Dr. Lathan, Karen Frank presented with "almost a classical history for food poisoning" due to the onset of the symptoms shortly after the consumption of the ham and the visible condition of the ham.

In addition, Dr. Arnold, who treated Elizabeth Meyer, diagnosed her with "food poisoning," rather than the more specific "staph food poisoning." Dr. Arnold performed a complete blood count, chemistry profile, amylase enzyme level and stool analysis to exclude other pos-

sible causes of her illness. The fact that the tests were negative is not inconsistent with Dr. Arnold's diagnosis of food poisoning, and in fact, Dr. Arnold testified that one would expect most or all of the tests to be normal in a case of acute food poisoning.

Both doctors testified that Elizabeth Meyer and Karen Frank suffered from food poisoning, that there are substances in ham which can cause food poisoning other than the one agent tested for by Silliker Laboratories, and that their diagnoses of food poisoning would not be affected by Silliker's test results. According to Dr. Lathan, the most likely cause of Karen Frank's food poisoning was the ham. The fact that testing may have shown that the ham did not contain any enterotoxin would not have changed his opinion because there are other organisms and "a whole host of bacteria" other than staphylococcus which can cause food poisoning.

Contrary to the appellees' contention, this is not a plain and undisputable case which mandates judgment in their favor as a matter of law. In none of the cases cited by the appellees was there any direct evidence that the food consumed was unwholesome, deleterious or unfit for human consumption. In the present case, however, there is direct evidence of the unwholesomeness of the ham. It is undisputed that the ham contained a putrid-smelling, white substance which looked like milk and tartar sauce. This direct evidence of the unwholesomeness of the ham, coupled with the fact that only those persons who consumed the ham became ill, all with the same general symptoms in the same general time frame, and the testimony of two doctors that at least two of the three individuals suffered from food poisoning, is sufficient to create a jury issue as to causation. See *Burns v. Colonial Stores*, 90 Ga. App. 492, 493 (1) (83 SE2d 259) (1954) (fact that the family, including dog and cat, became ill shortly after consuming meat was sufficient to create a jury issue regarding whether meat was contaminated); *Great A & P Tea Co. v. Dupee*, 71 Ga. App. 148, 150 (2) (30 SE2d 365) (1944) (fact that plaintiff and her family, all in good health, and within the same time after consuming the beef, became suddenly ill with the same symptoms of stomach pains, nausea and vomiting was sufficient to make a prima facie case against seller of meat).

While the appellees analogize this case with *Edwards*, where we held the plaintiff's claim failed as a matter of law, the facts in this case are different. In *Edwards*, there was no direct evidence that the food was unwholesome. Id. at 807. Moreover, *Edwards* involved a single plaintiff who suffered from pre-existing digestive problems. Finally, Edwards' own doctor testified that it was possible Edwards' illness was caused by his perception of what he ate, as opposed to being actually caused by what he ate. In the present case, there is no evidence that the appellants' illnesses were caused by their percep-

tion of the ham rather than their consumption of the ham. This fact is bolstered by the fact that the appellants did not immediately become sick after seeing the foul substance in the ham, but that their illnesses occurred several hours later. The trial court's order granting appellees' renewed motion for summary judgment is therefore reversed.

2. Because the issue is likely to arise during the trial of this case, we will address the appellants' contention that the ham they consumed was not the same ham the appellees had tested.

The trial court denied Cub Foods' and Greenwood's original motion for summary judgment based on allegations that the ham the appellants consumed was not the same ham tested by Silliker Laboratories. Appellants' key evidence on this point was Dorothy Meyer's testimony that the day after the appellants became sick, she returned to Cub Foods to get the label from the ham. According to her affidavit, Dorothy Meyer was told by an employee of Cub Foods that the ham had been thrown away. The employee also allowed her to look in the storage refrigerator to confirm that the ham had been thrown away.

Through affidavits and exhibits, the appellees provided a chain of custody as to the whereabouts of the ham and filed a renewed motion for summary judgment. According to the evidence, the appellants returned the ham to the Cub Foods store on February 17, 1994. On February 18, 1994, the meat manager of the store learned that a ham had been returned and was in the meat cooler. He inspected the only ham in the cooler, noticed what appeared to be an abscess in the middle of the ham, and returned the ham to the cooler. The meat manager was present two or three days later when a representative of Greenwood came and picked up the ham, which the representative removed from the cooler where the meat manager had left it.

C. James Brabham, Vice-President of Greenwood, received the ham at his office, examined it and noticed what he believed to be an abscess in the center of the ham. He took pictures of the ham, rewrapped it and placed it in a storage freezer. Brabham later retrieved the ham from the storage freezer where he had left it, re-examined the ham to make certain it was the same ham and packaged the ham for shipping to Athens Laboratories. He obtained the shipping label from Greenwood's administrative assistant and placed it on the box. He then placed the box in the outgoing mail receptacle.

Dr. John Carpenter of Athens Laboratories received the package from Greenwood. He received no other packages or hams which could have been confused with that received from Greenwood. Carpenter hand-delivered the package to Silliker Laboratories.

Appellants claim that, notwithstanding this evidence produced by the appellees, a material issue of fact is created by Dorothy

Meyer's affidavit stating that the store employee told her the ham had been thrown out. Appellants failed to provide competent evidence, either by affidavit or deposition, from the store employee or any other source regarding the alleged disposal of the ham.

"Evidence offered on motion for summary judgment is held to the same standards of admissibility as evidence at trial, and evidence inadmissible at trial is generally inadmissible on motion for summary judgment. Hearsay is never admissible and has no probative value unless it comes within a recognized exception to the rule." (Citations and punctuation omitted.) *Hagan v. Goody's Family Clothing*, 227 Ga. App. 585, 586 (490 SE2d 107) (1997). Once the party moving for summary judgment has made out a prima facie case, as was done by the appellees in this case, the burden of proof shifts to the opposing party to come forward with rebuttal evidence or suffer judgment against it. *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 65 (2) (a) (397 SE2d 576) (1990). The hearsay statement of the store employee is not admissible. Id. Moreover, while Meyer testified that she looked in the storage refrigerator and did not see the ham, there is no evidence that this storage refrigerator is the same as the meat cooler where the meat manager located the ham the day after it was returned. Based on these facts, the trial court correctly determined that no material issue of fact existed regarding whether the ham consumed by the appellants was the same ham tested by Silliker Laboratories.

3. Appellants further argue that the trial court should not have relied on the Silliker Laboratories testing results because the ham was destroyed or thrown away before they had an opportunity to independently test the ham. This spoliation of evidence argument was not addressed by the trial court. Because we do not have a ruling from the trial court regarding this issue, there is nothing for us to review. *Gen. Accident Ins. Co. v. Wells*, 179 Ga. App. 440 (1) (346 SE2d 886) (1986).

*Judgment reversed. Birdsong, P. J., and Smith, J., concur.*

DECIDED MARCH 31, 1998.

*Powell, Goldstein, Frazer & Murphy, Elmer A. Simpson, Jr., William B. Brockman, Marlo O. Leach*, for appellants.

*Drew, Eckl & Farnham, George R. Moody, Darrell T. Farr*, for appellees.