A01A1492. WORTHY v. THE BEAUTIFUL RESTAURANT, INC.
et al.
(556 SE2d 185)

BLACKBURN, Chief Judge.

In this action involving the alleged sale of unwholesome food, Mignon Worthy, in her capacity as the natural guardian of her son, Ricco Worthy, appeals the trial court's grant of summary judgment to The Beautiful Restaurant, Inc. and certain managers and employees of the Restaurant. Worthy contends that questions of fact remain whether the Restaurant served spoiled scrambled eggs to her which, in turn, caused complications during her pregnancy with Ricco. For the reasons set forth below, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1]

Viewing the evidence in this light, the record shows that, at approximately 1:00 a.m. on February 26, 1986, Mignon, who was approximately six months pregnant at the time, entered the Restau-

---

[5] *Gann v. State*, 245 Ga. App. 448, 449 (2) (538 SE2d 97) (2000).
[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

rant and ordered a buffet breakfast. Mignon chose scrambled eggs and served herself from a steam tray located on the buffet. As she ate the eggs, Mignon noticed nothing unusual about their taste or flavor. Later that morning, Mignon began experiencing abdominal pain, vomiting, and diarrhea. Because of her illness, Mignon went to a local hospital, and she was diagnosed as suffering from gastroenteritis. After receiving an anti-diarrheal agent, Mignon's symptoms subsided.

Mignon did not visit a physician again until March 5, 1986. At that time, she was diagnosed with a severe case of trichomoniasis, a sexually transmitted disease, and a possible urinary tract infection. On the following day, Mignon was admitted to Crawford Long Hospital, where it was discovered that her fetal membranes had ruptured prematurely. Then, on March 12, 1986, Ricco was delivered by Caesarian section. Ricco was born with several defects including cerebral palsy, seizures, and brain damage.

Eleven years later, on December 1, 1997, Mignon filed suit against the Restaurant and its employees, contending that: (1) the scrambled eggs she ate at the Restaurant were contaminated with staff aureus bacteria and its toxins; (2) the Restaurant negligently prepared and provided her with the eggs; (3) she contracted food poisoning from eating the eggs; (4) toxins from the bacteria caused her fetal membranes to rupture; and (5) Ricco's birth defects resulted from the premature rupture and the concomitant delivery.

In support of her complaint, Mignon filed the affidavits of three experts. The first, Dr. Michael Thompson, opined unequivocally that there was no other possible diagnosis for Mignon's gastroenteritis than food poisoning by staff aureus bacteria. Thompson, in turn, surmised that, due to Mignon's eating pattern on the day she became ill,[2] the scrambled eggs she ate at the Restaurant must have been the source of the toxins. The second expert, Dr. Michael Cardwell, testified that, based on Mignon's history, the only reasonable cause for the rupture of her fetal membranes was an infection with staff aureus bacteria. Finally, the third expert, Dr. Joseph Phillips, testified that, assuming the eggs eaten by Mignon were contaminated with staff aureus bacteria, Ricco's birth defects were proximately caused by his mother's ingestion of the eggs.

To counter Mignon's argument, the Restaurant provided affidavits from its own experts, who testified that, for the production of enough staff aureus toxins to make Mignon sick, the eggs which she ate would have had to be left sitting out at room temperature for at

---

[2] On the day in question, Worthy testified that the last food she had ingested prior to the scrambled eggs was consumed at 2:30 p.m. at the latest on the prior day. Other members of Worthy's family ate the same food and did not become ill.

least eight to ten hours. Jenna Mumford, an administrator for the Restaurant, further testified that, in 1986, the Restaurant did not begin to serve eggs until 11:00 p.m., and, as such, the eggs which Mignon ate at 1:00 a.m. could not have been left out for more than two hours.

On April 27, 2000, the Restaurant filed a second motion for summary judgment, contending that Mignon failed to shoulder her burden of proof. The trial court agreed, finding: (1) Mignon failed to rebut the Restaurant's direct evidence that the eggs she consumed had not been left out long enough for staph aureus toxins to develop, and (2) even if Mignon had raised a jury issue regarding causation, it was not foreseeable that staph aureus toxins would develop in the scrambled eggs. Mignon now appeals these findings.

1. Mignon contends that the trial court erred in granting summary judgment to the Restaurant based on its finding that she failed to rebut the Restaurant's direct evidence that the eggs which she consumed could not have been left out long enough for staph aureus toxins to develop. We agree.

In general,

[i]llness alone cannot establish proximate cause; a mere showing that a person became sick subsequent to eating food is insufficient. In the absence of direct evidence of the unwholesomeness or adulteration of the food, recovery could be supported by circumstantial evidence if every other reasonable hypothesis as to the cause of the plaintiff's illness could be excluded.

*Mann v. D. L. Lee & Sons, Inc.*[3]

On summary judgment, we are required to view the evidence and all reasonable conclusions and inferences from it in the light most favorable to the nonmovant. In this case, Dr. Thompson testified without equivocation both that poisoning from staph aureus bacteria must have been the cause of Mignon's illness and that the eggs she ate at the Restaurant must have been the source of that poisoning based on the timing and etiology of her symptoms. From this opinion, one can reasonably conclude that the eggs served by the Restaurant were contaminated with staph aureus toxins, and, as such, one may also reasonably infer that the eggs must have been improperly handled. And, in the face of this evidence, the testimony of the Restaurant's manager that the eggs were not left out long enough to develop staph aureus toxins merely creates a question of fact which a jury must resolve.

---

[3] *Mann v. D. L. Lee & Sons, Inc.*, 245 Ga. App. 224-225 (537 SE2d 683) (2000).

Contrary to the Restaurant's arguments, *Stevenson v. Winn-Dixie Atlanta*[4] does not change this result. In *Winn-Dixie*, unlike the present case, the plaintiff's expert admitted that things other than the ice cream which plaintiff ingested could have caused the plaintiff's illness. Accordingly, we found that summary judgment for the ice cream manufacturer was appropriate in that case because the "[p]laintiff's evidence is circumstantial, and she has not excluded every other reasonable hypothesis as to cause save unfitness of the ice cream for human consumption." Id. at 574 (1). Here, although it may strain credulity, Mignon's experts point to staph aureus as the only reasonable cause of her illness and the eggs served by the Restaurant as the only reasonable source. A jury must decide what weight to give this expert testimony, for this Court cannot.

2. Mignon contends that the trial court erred in granting summary judgment to the Restaurant based on its alternative finding that the injuries received by her and Ricco were not foreseeable. Again, we agree.

As a general matter, the law of negligence protects innocent parties to whom a duty is owed from foreseeable harm, and "[f]oresight requires the ability to anticipate a risk of harm from the [allegedly negligent] conduct." *Amos v. City of Butler*.[5] "It is sufficient if, in ordinary prudence, [the Restaurant] might have foreseen that some injury would result from [its] act . . . , and that consequences of a generally injurious nature might result." (Punctuation omitted.) *Bailey v. Jim's Minit Market*.[6]

Although the Restaurant argues that it could not have specifically foreseen the rupture of Mignon's fetal membranes, nonetheless, in ordinary prudence, the Restaurant might have foreseen that serving improperly handled food to Mignon could make her ill and that generally injurious consequences might ensue. *Bailey*, supra. Accordingly, the trial court erred by granting summary judgment to the Restaurant on the issue of foreseeability.

*Judgment reversed. Pope, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 2, 2001 —
RECONSIDERATION DENIED NOVEMBER 16, 2001 —

*James A. Goldstein*, for appellant.

---

[4] *Stevenson v. Winn-Dixie Atlanta*, 211 Ga. App. 572 (440 SE2d 465) (1993).
[5] *Amos v. City of Butler*, 242 Ga. App. 505, 506 (1) (529 SE2d 420) (2000).
[6] *Bailey v. Jim's Minit Market*, 242 Ga. App. 518, 520 (529 SE2d 436) (2000).

*Alston & Bird, Douglas G. Scribner, Gerald L. Mize, Jr., Paul J. Kaplan*, for appellees.