# WHOLE COURT

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 30, 2017**

# In the Court of Appeals of Georgia

A17A0399. PATTERSON et al. v. KEVON, LLC.

BETHEL, Judge.

Joshua and Taylor Patterson (the "Pattersons") appeal from the trial court's grant of summary judgment in favor of Kevon, LLC, the owner and operator of Big Kev's Barbecue ("Big Kev's"), a dining and catering establishment. The Pattersons attended a wedding rehearsal dinner at which chicken and other food items were prepared and served by Big Kev's. The Pattersons later brought suit against Kevon, alleging that the food prepared and served by Big Kev's at the dinner had been negligently prepared, was unsavory and contaminated, and had caused them a variety of ailments in the days following the rehearsal dinner. Finding that the Pattersons had not excluded all other reasonable possibilities for why they became sick, the trial court granted summary judgment in favor of Kevon. We agree with that determination and affirm the trial court's ruling.

To prevail on a motion for summary judgment pursuant to OCGA § 9-11-56 (c), the moving party must demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Because this case arises from a decision on Kevon's summary judgment motion, we view the facts in a light most favorable to the Pattersons as the non-moving parties. *Lau's Corp., Inc. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991).

So viewed, Big Kev's provided a variety of foods for the rehearsal dinner, including barbecue chicken, macaroni and cheese, and cole slaw. Neither the Pattersons nor any other dinner guests inspected any of the food before consuming it, and the food served by Big Kev's was never tested for salmonella or other pathogens. None of the guests suggested that the food served by Big Kev's looked or smelled abnormal at the time it was served.

Desserts for the rehearsal dinner were prepared by someone other than Big Kev's. The Pattersons each ate dessert at the dinner, but several individuals who reported becoming ill testified that they did not have dessert at the rehearsal dinner. There was a bartender at the rehearsal dinner (not employed by or affiliated with Big Kev's) who served alcoholic beverages to guests. Several guests, including Joshua Patterson, drank alcohol at the rehearsal dinner, but Taylor Patterson did not recall

2

drinking alcohol at the rehearsal dinner. Leftovers from the meal were stored in a cooler overnight by the groom's parents and then consumed the following day by Joshua Patterson and other members of the wedding party. Taylor Patterson did not eat the leftovers, nor did some of the other guests who later reported being ill.

A couple of days[1] after the rehearsal dinner, the Pattersons were out of town when Joshua Patterson became ill with symptoms consistent with a salmonella infection. He sought medical treatment the following morning, and he was admitted to emergency care where he later tested positive for salmonella. He remained under medical care and supervision for several days, during which time Taylor Patterson also began to experience symptoms consistent with food poisoning.[2]

The Pattersons returned home a few days later and learned that other guests who had eaten at the rehearsal dinner had also suffered symptoms consistent with salmonella poisoning around the same time Joshua Patterson had begun feeling ill.

---

[1]During this period, the Pattersons ate several meals from various sources including a meal at the wedding reception not catered by Big Kev's and at least one meal at a chain fast food establishment .

[2] Taylor Patterson was never tested for salmonella. Both of the Pattersons testified that she was treated for salmonella because her symptoms were similar to those of her husband. Like Taylor, there were other guests at the dinner who later reported being ill but who were never diagnosed with salmonella.

However, the owners of the event venue where the rehearsal dinner took place (and a number of its employees) consumed food that evening prepared by Big Kev's, and they did not report becoming ill. Likewise, there were several other people who consumed the food served by Big Kev's at the rehearsal dinner and as leftovers the following day who did not become ill.

The Pattersons brought suit against Kevon alleging that the food served at the dinner by Big Kev's had been negligently prepared and was the cause of their illnesses. The Pattersons also claimed that Kevon had violated the Georgia Food Act by serving food that was adulterated and that Kevon was strictly liable for failing to warn the Pattersons of defective conditions in the food served at the dinner.

Kevon moved for summary judgment on each claim, arguing that the Pattersons had failed to demonstrate that the food prepared and served by Kevon was the proximate cause of the Pattersons' illnesses. Specifically, Kevon noted the absence of scientific testing or other direct evidence that the food was underprepared or otherwise unfit for consumption and argued that the circumstantial evidence in the record failed to exclude every other reasonable hypothesis as to the cause of the Pattersons' illnesses. Following a hearing, the trial court granted Kevon's motion for summary judgment as to all claims on that basis. This appeal followed.

4

Because Kevon's motion for summary judgment and the trial court's order granting it focused solely on the issue of proximate cause, we do not consider whether the Pattersons have brought forward evidence to establish the other elements of their claims against Kevon. *See Ashton Atlanta Residential, LLC v. Ajibola*, 331 Ga. App. 231, 232 (770 SE2d 311) (2015) ("If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim . . . . [a]ll of the other disputes of fact are rendered immaterial.").

At the outset, we note that a plaintiff may prevail in food poisoning cases in Georgia by establishing that the food at issue was defective or unwholesome. *Wilson v. Mars, Inc.*, 121 Ga. App. 790, 791 (2) (175 SE2d 924) (1970). However, in the absence of direct evidence of the defectiveness of the food, recovery can be supported by circumstantial evidence only if every other reasonable hypothesis as to the cause of the plaintiff's illness can be excluded by the evidence brought forward by the plaintiff. *See Payton v. Lee*, 88 Ga. App. 422, 425 (77 SE2d 77) (1953). Here, we agree with the trial court that the Pattersons have not met this burden.

Although both the Pattersons and a number of others who consumed the food served by Big Kev's at the rehearsal dinner subsequently became ill, the record shows that a number of individuals who consumed the same food that evening did not

5

become ill. Thus the Pattersons' theory of the case does not exclude the possibility that the illness was transmitted to them from a source other than the food served by Big Kev's or explain why others who consumed the food served by Big Kev's did not become ill. Likewise, because Taylor Patterson only began to show symptoms of illness several days after her husband and others reported beginning to feel sick, she has not excluded the possibility that she became ill as a result of her exposure and proximity to Joshua while he was symptomatic.

We take note of the Pattersons' argument that, in negligence suits, proximate cause is generally a question of fact that is reserved for the jury, citing our decision in *Castleberry's Food Co. v. Smith*, 205 Ga. App. 859, 862 (2) (424 SE2d 33) (1992). However, suits alleging illness from food poisoning that are based entirely on circumstantial evidence are a unique species of negligence cases, and our prior decisions have required plaintiffs in this context to bring forth evidence demonstrating that the only reasonable hypothesis for why they became ill was due to acts or omissions of the defendant, to the exclusion of all other reasonable theories. *See, e.g.*, *Stevenson v. Winn-Dixie Atlanta, Inc.*, 211 Ga. App. 572, 574-75 (1) (440 SE2d 465) (1993).

6

This special element prevents a plaintiff from recovering solely on the basis of speculation and conjecture and requires plaintiffs to engage in a rigorous examination of all reasonable theories of contamination. *See Edwards v. Campbell Taggart Baking Co., Inc.*, 219 Ga. App. 806, 807 (1) (466 SE2d 911) (1996); *Castleberry's Food*, 205 Ga. App. at 862 (2) ("[a] verdict based on conjecture cannot stand"(citation omitted)). This standard also shields defendants from what, in some cases, may amount to fallacious *post hoc, ergo propter hoc* arguments that advance the plaintiff's theory of contamination.[3] *See Mann v. D.L. Lee & Sons, Inc.*, 245 Ga. App. 224, 224 (537 SE2d 683) (2000) (providing that illness alone cannot establish proximate cause and that a mere showing that a person became sick subsequent to eating food is insufficient). In so doing, this rule reserves to the jury only those cases in which evidence brought forth by the plaintiff establishes a clear and direct link between the defendant's food

---

[3] The record in this case illustrates this point. In a deposition of one of the non-party witnesses, counsel for the Pattersons asked the witness only a pair of questions: "You weren't experiencing any [symptoms] prior to [the dinner] were you?" and "[Those] symptoms did not start until after eating at the rehearsal dinner . . . correct?" Plaintiff's counsel repeated this colloquy with another witness, adding only a question as to how many days of work she had missed after becoming ill. To a third witness, plaintiff's counsel asked only whether it was the witness's opinion and belief that he had become ill due to eating the food served at the rehearsal dinner. In order to survive a motion for summary judgment in this type of case, a more thorough examination of the potential causes of illness is required.

and the plaintiff's injuries. Because the Pattersons have not carried that heavy burden

in this case, we affirm the trial court's grant of summary judgment in favor of Kevon.

*Judgment affirmed. Miller, P.J., Branch, McMillian, and Mercier, JJ.*

*concur. Doyle, C.J., Barnes, P.J., McFadden, P.J. and Reese, J. dissent.*

A17A0399. PATTERSON et al. v. KEVON, LLC.

DOYLE, Chief Judge, dissenting.

Based on the record before us, I disagree that the Pattersons have failed to meet their burden on summary judgment to put forth evidence that excludes every other reasonable hypothesis as to the cause of their illness.

Specifically, Big Kev's posits that the rehearsal dinner dessert provided by a separate caterer, a bartender's service of alcohol at the rehearsal dinner, Big Kev's leftovers eaten the following day, food served at the wedding reception by another caterer, and, as to Taylor Patterson, her care for her husband while he was "contagious" are other reasonable hypotheses for the cause of their illness. However, besides the Pattersons, approximately 17 other guests who ate at the rehearsal dinner also became ill, 4 of whom testified that they experienced the same symptoms within a similar time frame, with one of them also officially diagnosed with salmonella like Joshua Patterson.[1]

---

[1] The rehearsal dinner took place on Friday, June 20. On June 23, Joshua began to experience diarrhea, vomiting, and chills. The next day, his stool sample tested positive for salmonella. Though she was not officially diagnosed with salmonella, on June 25, Taylor Patterson began to experience diarrhea, cramping,

In addition to the two formal diagnoses of salmonella linked to food poisoning, there is testimony from at least one person who became ill that he or

---

vomiting, stomach pain, and fever, and she was treated for salmonella. Andrew Love testified that on June 24, he began to experience diarrhea, vomiting, high fever, and chills. Love then sought treatment at the emergency room, where doctors took a stool sample that tested positive for salmonella resulting from tainted food. On June 22, Todd Wischerth became ill experiencing aches, fever, chills, sweating, shaking, diarrhea, and nausea that were so bad that he had to cancel his June 23 flight and reschedule it for June 26, when he still felt "pretty dicey." Leslie Reynolds deposed that she suffered diarrhea and related symptoms from late Sunday night through Wednesday. And on Sunday night, Andrew Martin began suffering from severe diarrhea and chills, and he could not eat. Overall, these witnesses estimated that as many as 17 out of the 40 guests who attended the rehearsal dinner got sick.

she did not consume the dessert,[2] alcohol,[3] leftovers,[4] or wedding reception food.[5]

Rather, the evidence shows that the only common food that the Pattersons and the four witnesses ate was the food served by Big Kev's. The diagnosis of salmonella and this testimony are sufficient to exclude the alternative hypotheses posited by

---

[2] Reynolds, Wischerth, and Martin testified they did not eat the dessert. This testimony is evidence that would exclude the dessert as a reasonable hypothesis as to the cause of the illness.

[3] There is no evidence that Taylor Patterson consumed any alcohol at the rehearsal dinner. This would exclude the service of alcohol as a reasonable hypothesis. Further, according to Big Kev's, "little is known about the bartender at the rehearsal dinner," but the record shows that the bartender did not attend the wedding, and Love deposed that he learned that the bartender also ate Big Kev's food and got salmonella within a couple of days. There is no evidence that the bartender was sick or had symptoms at the rehearsal dinner. An alternative hypothesis must be reasonable; a plaintiff does not have the burden to rule out tenuous or speculative hypotheses. Accordingly, this record does not support a reasonable hypothesis showing that the bartender was the source of the victims' illness.

[4] Taylor, Reynolds and Wischerth testified they did not eat any leftovers. This testimony is evidence that would exclude the leftovers as a reasonable hypothesis.

[5] Love testified that he ate no food at the wedding reception. He also testified that the bartender from the rehearsal dinner ate there and got ill, and he did not attend the wedding. This testimony is evidence that would exclude the wedding reception food as a reasonable hypothesis.

3

Big Kev's as to the cause of the illness.[6] Thus, the grant of summary judgment in favor of Big Kev's was improper.

I am authorized to state that Barnes, PJ. and McFadden, PJ., join in this dissent.

---

[6] Big Kev's also argues that because of the timing of her symptoms, Taylor Patterson "caught" her illness from her husband, so she cannot be relied upon to rule out alcohol as the source of illness. But this is speculative and is properly probed at trial and resolved by the jury. Thus, this theory does not create a reasonable hypothesis that her illness was caused by a source other than Big Kev's food served at the rehearsal dinner that her husband consumed.

A17A0399. PATTERSON et al. v. KEVON, LLC.

MCFADDEN, Presiding Judge, dissenting.

I respectfully dissent. Because the trial court invaded the province of the jury in granting summary judgment to Big Kev's, the judgment should be reversed.

There is no direct evidence that the food served by Big Kev's as the rehearsal dinner was defective, so the Pattersons must rely on circumstantial evidence to satisfy the proximate cause element of their case against Big Kev's. That is not an easy burden. To prevail on their claim at trial, the Pattersons must show that every other reasonable hypothesis as to the cause of their illness can be excluded. See *Worthy v. Beautiful Restaurant*, 252 Ga. App. 479, 481 (1) (556 SE2d 185) (2001); *Castleberry's Food Co. v. Smith*, 205 Ga. App. 859, 861 (2) (424 SE2d 33) (1992).

But that is their burden of proof as the plaintiffs at trial. That is not their burden as the nonmovants opposing a motion for summary judgment. As to the defendant's motion for summary judgment,

the burden of proof is always on the movant, even with respect to

issues on which the plaintiff would have the burden of proof at trial[.]

. . . On motion for summary judgment, all doubts as to evidence and

the benefit of any conflict are to be indulged in favor of the opposing

party and construed against the movant. If the trial court is presented

with a choice of inferences to be drawn from the facts, all inferences

of fact must be drawn against the movant and in favor of the party

opposing the motion.

*Barlow v. Orkin Exterminating Co.*, 196 Ga. App. 822, 823 (397 SE2d 170)

(1990) (citations omitted). To survive summary judgment, a nonmovant need not

have exhaustively examined deposition witnesses or conducted discovery in any

particular way, contrary to the suggestion in footnote 2 of the majority opinion.

The nonmovant's sole obligation is to point to *some* evidence that creates a

genuine issue of material fact.

Generally, in a case involving circumstantial evidence, the question of

whether every other reasonable hypothesis can be excluded is not a question for

the trial court on summary judgment (or this court on appeal). "[T]he sufficiency

of circumstantial evidence, and its consistency or inconsistency with alternative hypotheses, is a question for the jury." *Southern R. Co. v. Ga. Kraft Co.*, 258 Ga. 232 (367 SE2d 539) (1988). Summary judgment is not appropriate if the nonmovant can point to evidence creating a fact question about whether reasonable alternative hypotheses arise from circumstantial evidence. Where there is evidence from which a jury could find that food poisoning was the only reasonable cause of a plaintiff's illness, and evidence that the defendant's food was the only reasonable source of that food poisoning, even if that evidence "may strain credulity," then a jury question is presented. *Worthy*, supra, 252 Ga. App. at 482 (1).

And applying these principles, Big Kev's is not entitled to summary judgment. Viewed in the light most favorable to the Pattersons, the evidence shows that Joshua Patterson was diagnosed with salmonella a few days after eating food prepared by Big Kev's and that several others who also ate the Big Kev's food, including Taylor Patterson, experienced symptoms similar to Joshua Patterson. This is circumstantial evidence that the Big Kev's food proximately caused Joshua Patterson's salmonella and Taylor Patterson's similar illness. It is for a jury to determine whether the other hypotheses advanced by Big Kev's —

3

such as the hypothesis that Joshua Patterson caught salmonella from a bartender — are reasonable and, if so, are excluded by the above evidence.

The cases cited by the majority do not require a different conclusion. In all of those cases, it was uncertain whether the plaintiff had food poisoning at all, rather than another type of illness or condition. See *Mann v. D. L. Lee & Sons*, 245 Ga. App. 224 (537 SE2d 683) (2000) (stool culture performed on one of the plaintiffs "revealed no pathogens"); *Edwards v. Campbell Taggart Baking Cos.*, 219 Ga. App. 806 (466 SE2d 911) (1996) (plaintiff had a history of digestive problems, and his physician "opined that [plaintiff's] illness was caused by his perception of what he ate and not by the quality of the [food]"); *Stevenson v. Winn-Dixie Atlanta*, 211 Ga. App. 572, 573 (440 SE2d 465) (1993) (plaintiff's physician "indicated it [was] possible that the cause of illness was a virus," rather than food poisoning); *Castleberry's Food Co.*, supra, 205 Ga. App. at 862 (2) (microbiologist testified that the type of food poisoning alleged by plaintiff was inconsistent with the timing of the onset of his symptoms, and although two doctors testified that plaintiff's illness could be food poisoning, one of those doctors testified that there was an "endless list of possible causes" of his symptoms, including plaintiff's pre-existing medical condition). And although in

4

*Payton v. Lee*, 88 Ga. App. 422, 425 (77 SE2d 77) (1953), the plaintiff's physician testified that her illness was due to food poisoning, there was evidence of a viral illness "of epidemic proportions" in the plaintiff's city with similar symptomology.

Here, in contrast, there was direct evidence that Joshua Patterson had contracted salmonella. This fact, combined with the evidence that several other people who had consumed the Big Kev's food presented symptoms consistent with salmonella poisoning, was enough to survive summary judgment.

I am authorized to state that Reese, J., joins in this dissent.